IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>            Plaintiff,<br><br>     vs.<br><br>CHESTER GARBER, et al.,<br><br>           Defendant. | No. CV-F-94-5414 REC<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S UPDATED MOTION FOR ATTORNEYS' FEES (Doc. 312) |

On March 10, 2003, the court heard plaintiff's Updated Motion for Attorneys' Fees.  By Order filed on June 17, 2003, the court ordered National Union to respond to the merits the Garbers' contention that California Code of Civil Procedure §§ 685.070 and 685.090 preclude an award of attorneys' fees incurred in this action seeking to enforce the judgment against the Garbers in No. CV-F-88-088 REC and to provide the court with an explanation of a gap in the billings between February 26, 1999 and July 13, 1999.

1

Upon due consideration of the written and oral arguments of the parties and the record herein, the court grants this motion in part and denies it in part as set forth herein.

National Union Fire Insurance Company of Pittsburgh, PA has filed an Updated Motion for Attorneys' Fees, seeking an award of attorneys' fees against Chester Garber and his wife, Emilia Ting Garber (hereinafter referred to as the Garbers), and against Betty Ting.

The attorneys' fees sought by this motion are categorized in one of the following four matters: (1) the Fraudulent Conveyance Action; (2) the Garbers' Bankruptcy; (3) Betty Ting's bankruptcy; and (4) appeals.  National Union submits the following chart outlining the attorneys' fees incurred by each firm with respect to each matter through May 31, 2000:

| Law Firm | Fraud Convy Action | Garber Bkrtcy | Ting Bkrtcy | Appeals | Totals |
|----------|--------------------|---------------|-------------|---------|--------|
| McCormick | $113,894.50 | $38,943.50 | $61,089.50 | $32,828.50 | $246,756.00 |
| D'Amato | $30,468.00 | $21,198.00 | $4,48.75 | $6,612.50 | $62,767.25 |
| Wilson | $5,119.75 | $329.25 | | | $5,449.00 |
| Ericksen | $312.50 | $1,187.50 | | | $2,200.00 |

```
Totals          $149,794.75   $62,358.25    $65,578.25    $39,441.00    $317,172.25
```

These amounts were increased in a Supplemental Declaration by Scott M. Reddie filed on August 28, 2000 setting forth attorneys fees incurred by McCormick, Barstow from June 1, 2000 through August 14, 2000 of an additional award of $28,085 attributed by National Union to the Fraudulent Conveyance Action, an additional $135 attributed to the Garber Bankruptcy, and an additional $1,260 attributed to the Ting Bankruptcy.  In its Updated Motion, National Union is seeking to be awarded the following additional amounts as attorneys' fees: $32,797 attributable to the Fraudulent Conveyance Action; an additional $2,025 attributable to the Garber Bankruptcy; an additional $13,631.50 attributable to the Ting Bankruptcy; and an additional $53,165.50 attributable to appellate fees.[1]

With these additional amounts, National Union is requesting that the court award it attorneys' fees in the amount of $448,451.25 (Fraudulent Conveyance Action: $210,676.75; Garber Bankruptcy: $64,698.25; Ting Bankruptcy: $80,469.75; Appellate Fees: $92,606.50).

A.  <u>Background</u>.

On December 28, 1984, the Garbers invested approximately $50,000 in a limited partnership known as Hambrose Leasing, Ltd.

---

[1]The Garbers have filed a motion for Rule 11 sanctions against National Union to the extent that the Update Motion seeks an award of fees attributable to these appellate fees.  The Garbers' Rule 11 motion will be resolved in a separate order.

by making a down payment of $6,200 and executing three promissory notes to make annual payments of $14,600.  National Union acted as surety in the event the Garbers defaulted on the promissory notes.  The Garbers did default.  National Union filed an action for reimbursement that was eventually transferred to this court and prosecuted as <u>National Union v. Garber</u>, No. CV-F-88-088 REC (hereafter referred to as the Bond Case).  On March 6, 1992, this court entered summary judgment for National Union in the amount of $51,031.40 in principal, $30,906.91 in interest accrued as of November 15, 1991, and awarded attorneys' fees in the amount of $69,389.08.  The court's judgment and fee award were affirmed by the Ninth Circuit on August 30, 1993.  On January 11, 1994, the Ninth Circuit awarded National Union's attorneys' fees on appeal in the amount of $4,310.

In May, 1993, National Union conducted a debtor's examination of the Garbers.  National Union learned for the first time that the Garbers had either pledged or transferred all of their assets, both business and personal, to Emilia Ting Garber's sister, Betty Ting, and that some of the Garbers' assets were encumbered by liens in favor of Betty Ting.

On April 29, 1994, National Union filed its Complaint to Set Aside Fraudulent Conveyance, No. CV-F-94-5414 REC (hereinafter referred to as the Fraudulent Conveyance Action) against the Garbers and Betty Ting.

On June 24, 1994, the Garbers, then proceeding in pro per, filed a Counterclaim and Third Party Complaint for Damages in the

4

Fraudulent Conveyance Action against National Union and others, alleging causes of action for negligence, intentional infliction of emotional distress, declaratory relief, civil conspiracy, and violation of RICO.  A motion to dismiss the Counterclaim and Third Party Complaint was filed by a number of the parties, including National Union.  This motion to dismiss was set to be heard on September 26, 1994 and had been fully briefed.  However, just prior to oral argument, the Garbers filed a bankruptcy petition.  Therefore, the court, by order filed on November 2, 1994, stayed all proceedings by National Union and stayed the Garbers' Counterclaim and Third Party Complaint pending decision by the Chapter 7 Trustee concerning further proceedings with respect to the Counterclaim and Third Party Complaint.

Following the filing by the Garbers of their bankruptcy petition, National Union filed an adversary proceeding in the Bankruptcy Court to determine the dischargability of National Union's claim and to deny the Garbers a discharge.  The adversary proceeding alleged that the Garbers had submitted false information to National Union in order to obtain the financial guarantee bond and that the Garbers had made fraudulent transfers to Betty Ting of avoid National Union's judgment against the Garbers.  The bankruptcy court ruled that the adversary proceeding was a "core" proceeding.  By stipulation approved by the Bankruptcy Court on May 5, 1995, the parties stipulated that the Garbers could prosecute their Counterclaim and Third Party Complaint and to abate any prosecution of the Fraudulent

Conveyance Action against Betty Ting pending prosecution of the Counterclaim and Third Party Complaint.

This court thereupon heard the motions to dismiss the Garbers' Counterclaim and Third Party Complaint in the Fraudulent Conveyance Action on June 12, 1995. At the hearing, the Garbers filed a "special appearance" in which they challenged this court's ability to proceed with the motions to dismiss, contending that no relief from the automatic stay had been requested or obtained and that, therefore, this court could not proceed notwithstanding the stipulation. This court rejected this argument in its Order re Motions to Dismiss Counterclaim and Third Party Complaint filed on September 12, 1995. At oral argument on June 12, 1995, the Garbers asserted for the first time that National Union's Complaint in the Fraudulent Conveyance Action is a "core" proceeding, that the Garbers' Counterclaim and Third Party Complaint are "related" proceedings, and that, therefore, the Fraudulent Conveyance Action should be heard by the Bankruptcy Court. While National Union conceded that its Complaint in the Fraudulent Conveyance Action is a "core" proceeding and that the Garbers' Third Party Complaint is a "related" proceeding, because National Union's action against Betty Ting was not, National Union argued that the court should not transfer the Fraudulent Conveyance Action to the Bankruptcy Court. In the September 12, 1995 Order, the court withdrew the reference of the adversary proceeding filed by National Union in the Bankruptcy Court to this court. The court then ruled on the

merits of the motions to dismiss the Garbers' Counterclaim and
Third Party Complaint.  The court rejected the Garbers' meritless
challenges to this court's subject matter jurisdiction over
National Union's Complaint and dismissed the Third Party
Complaint against D'Amato & Lynch for lack of personal
jurisdiction and improper service of process (which motion was
unopposed by the Garbers).  The court further ruled that, with
the exception of the counterclaim for declaratory relief, all of
the counterclaims were compulsory and barred by res judicata
because of the allegations and rulings in the Bond Case, which
was conceded by the Garbers.  However, the Garbers attempted to
overcome this concession by arguing that they did not know all
the facts during the Bond Case.  The court rejected this
argument, noting that there was no allegation that National Union
fraudulently concealed these alleged facts and further noting the
absence of any authority that a party's alleged ignorance of
certain facts has any relevance to a determination whether a
counterclaim should be considered compulsory for purposes of Rule
13(a).  The court also dismissed the Third Party Complaint in the
September 12, 1995 Order, ruling that the Garbers, by their
failure to oppose the motion, had conceded its dismissal and
further ruling that the Third Party Complaint failed
substantively as well.  In the September 12, 1995 Order, the
court did not dismiss the Garbers' counterclaim for declaratory
relief against National Union because the limited basis for that
portion of the motion was not applicable.  However, by Order

filed on November 13, 1995, the court granted National Union's motion to dismiss the counterclaim for declaratory relief by which the Garbers prayed for a declaration that the judgment in the Bond Case was obtained by fraud.  In the November 13, 1995 Order, the court ruled that the allegations in the Garbers' counterclaim for declaratory relief pertained to the bringing of the Fraudulent Conveyance Action, not the Bond Case, challenged the merits adjudicated in the Bond Case, or involved allegations of fraud in other unrelated cases.  This court also ruled that the counterclaim for declaratory relief involved an allegation concerning the failure to provide in discovery in the Bond Case the original investor application, which the Garbers admitted at oral argument had not been the subject of a motion to compel in the Bond Case, admitted that their suspicion that the investor application had been altered was not brought to the court's attention in the Bond Case even though the Garbers had this information prior to summary judgment in the Bond Case, and admitted that the introduction of the original investor application in the Bond Case would not have resulted in a different conclusion in the Bond Case.  The court's dismissal of the Garbers' Counterclaim and Third Party Complaint in the Fraudulent Conveyance Action was affirmed on appeal.  National Union v. Garber, 1998 WL 30810 (9th Cir. 1998).

On June 18, 1996, the Bankruptcy Court granted relief from the automatic stay in the Garbers' bankruptcy.  The Garbers appealed the Bankruptcy Court's order to this court in In re

1   <u>Garber</u>, No. CV-F-96-5858 REC, and then to the Ninth Circuit,

2   where this court's ruling was affirmed.  <u>In re Garber.</u>, 2000 WL

3   674749 (9th Cir. 2000).

4       Even though the Garbers appealed this court's ruling

5   affirming the Bankruptcy Court's relief from the automatic stay,

6   the Garbers failed to seek a stay of the Fraudulent Conveyance

7   Action pending appeal.  National Union filed a Motion for Summary

8   Judgment in the Fraudulent Conveyance Action.  By Order filed on

9   September 24, 1998 (hereinafter referred to as the September 24

10  Order), the court granted summary judgment for National Union,

11  ruling that the Garbers' execution of five demand notes secured

12  by deeds of trust on five parcels of real property in favor of

13  Betty Ting on March 27, 1991 were fraudulent transfers within the

14  meaning of California Civil Code §§ 3439.04(b) and 3439.05.  The

15  court also ruled that the Garbers' assignments of the stock of

16  Golden Valley Aero, Inc. and Emilia Ting, M.D., Inc. to Betty

17  Ting on January 10, 1988 were fraudulent transfers within the

18  meaning of Sections 3439.04(b) and 3439.05.  The court further

19  ruled in the September 24 Order in pertinent part:

20          2.  <u>Avoidance to Transfers and Money</u>
            <u>Judgment</u>.

21
            California Civil Code § 3439.07(a)(1)
22          provides that a creditor, subject to the
            limitations of Section 3439.08, may obtain
23          '[a]voidance of the transfer or obligation to
            the extent necessary to satisfy the
24          creditor's claim.'  Section 3439.08 provides
            in pertinent part as follows:
25
                (b) Except as otherwise provided in
26              this section, to the extent a

                                    9

> transfer is voidable in an action
> by a creditor under paragraph (1)
> of subdivision (a) of Section
> 3439.07, the creditor may recover
> judgment for the value of the asset
> transferred, as adjusted under
> subdivision (c), or the amount
> necessary to satisfy the creditor's
> claim, whichever is less.  The
> judgment may be entered against the
> following:
>
> (1) The first transferee of the
> asset or the person for whose
> benefit the transfer was made.
>
> ...
>
> (c) If the judgment under
> subdivision (b) is based upon the
> value of the asset transferred, the
> judgment shall be for an amount
> equal of the value of the asset at
> the time of the transfer, subject
> to adjustment as the equities may
> require.

National Union seeks avoidance of the transfers of the stock of Golden Valley Aero, Inc. and Emilia Ting, M.D., Inc. to Betty and of the issuance to Betty of the deeds of trust on the five parcels of real property. Additionally, National Union seeks a money judgment as compensatory damages against the Garbers and from Betty for the amount that is owed to National Union pursuant to its judgment in the Bond Case plus interest and attorneys' fees in this action.  National Union seeks these compensatory damages pursuant to a conspiracy theory.  National Union argues that Betty was the first transferee and that the transfers were made for the benefit of the Garbers because the transfers allowed the assets to be kept in the family as [sic] the expense of 'non-insider creditors'.  National Union contends that all defendants participated in this fraudulent scheme and, therefore, equities mandate that a money judgment be entered against Betty as well as the Garbers.

> The court agrees.  Betty's assertion that National Union is not entitled to a money judgment against her is not supported by the case upon which she relies, <u>Ackerman v. Merle</u>, 137 Cal. 168, 171 (1902).  Furthermore, the statute supports National Union's position.

> ACCORDINGLY, IT IS ORDERED that National Union Fire Insurance Company of Pittsburgh, Pa's Motion for Summary Judgment is granted.

> IT IS FURTHER ORDERED that the parties appear before the Magistrate Judge for further proceedings in connection with proof of the value of the assets subject to the voided transfers at the time of the transfers in order to determine the judgment to be entered pursuant to California Civil Code § 3439.08.

On March 25, 1999, the court heard National Union's Motion for Sanctions Against Betty Ting for Spoliation of Evidence.  By this motion, National Union sought an order entering a default money judgment against Betty Ting as a sanction on the ground that she had destroyed documents and evidence that was integral for National Union to prove the amount of its damages in the Fraudulent Conveyance Action.

After National Union's motion for sanctions against Betty Ting for spoliation of evidence was filed and briefed, Betty Ting, on May 3, 1999, filed a Chapter 13 bankruptcy petition in the Northern District of California and filed a Notice of Automatic Stay with this court.  Additionally, several weeks prior to the filing of the bankruptcy petition, Betty Ting filed a homestead declaration with respect to the Pacific Grove property.  Ting filed three plans in the bankruptcy.  After a trial, the bankruptcy court denied plan confirmation and ordered

11

Ting to dismiss the bankruptcy or convert it to a Chapter 7 on or before April 14, 2000.  Ting ultimately requested the Bankruptcy Court to convert the bankruptcy to a Chapter 7 on June 23, 2000.  In the meantime, the Bankruptcy Court lifted the automatic stay on October 14, 1999.

On June 7, 2000, the court issued its Order Granting Plaintiff's Motion for Sanctions Against Betty Ting for Spoliation of Evidence and Directing Clerk of Court to Enter Default Money Judgment Against Betty Ting (hereinafter referred to as the June 7 Order).  In the June 7 Order, the court ordered that a default money judgment in the amount of $203,984.70 plus $19.29 per day from February 1, 1999 be entered by the Clerk of the Court against Betty Ting.  A Default Money Judgment was entered on June 8, 2000, whereby judgment was entered for plaintiff and against defendant Betty Ting in the amount of $203,984.70 plus $19.29 per day from February 1, 1999.

On June 19, 2000, National Union filed a Motion to Alter or Amend Default Money Judgment Entered on June 8, 2000.  In its Order Granting in Part and Denying in Part Plaintiff's Motion to Alter or Amend Default Monetary Judgment Entered on June 8, 2000 and Deferring Resolution of Plaintiff's Motion for Attorneys' Fees filed on February 12, 2001, the court granted National Union's motion to alter or amend by amending the default money judgment to include the specific descriptions and deeds of trust for the five properties the transfers of which were voided by the September 24 Order, by amending the judgment to award National

12

1   Union $203,984.70 plus $19.29 per day from February 1, 1999

2   through June 8, 2000, with post-judgment interest to be

3   determined pursuant to 28 U.S.C. § 1961, and by rejecting the

4   arguments made by the Garbers and/or Betty Ting concerning right

5   to jury trial, that the Complaint alleged no privity of contract

6   between National Union and Betty Ting, that no duty was owed to

7   National Union by Betty Ting, that any bookkeeping she did was as

8   the agent and/or employee of the Garbers or their corporations,

9   that California law imposes no personal liability for such agency

10   and/or employment, that a civil conspiracy does not give rise to

11   a cause of action in California, that Betty Ting is entitled to

12   full procedural due process and a jury trial, that the court has

13   never heard any defendant testify as a witness and that the court

14   should reverse the September 24 Order and the June 7 Order, that

15   National Union did not give notice of its motion to alter or

16   amend the default money judgment to the trustees in either Betty

17   Ting's or the Garbers' bankruptcies, and that the bankruptcy

18   court's order lifting the automatic stay in the Garbers'

19   bankruptcy did not include entering a judgment or enforcing a

20   judgment.

21      National Union also filed a Motion for Attorneys' Fees.  In

22   the February 12 Order, the court ruled that National Union was

23   entitled to attorneys' fees incurred in the Fraudulent Conveyance

24   Action against the Garbers because the contract in the Bond Case

25   provided for attorneys' fees and because of the application

26   California Code of Civil Procedure § 685.040.  The court further

ruled in the February 12 Order that National Union was entitled
to attorneys' fees from the Garbers and Betty Ting because of bad
faith, holding in pertinent part:

> In asserting that it is entitled to
> attorneys' fees against the Garbers and Betty
> Ting on this ground, National Union notes
> that the court found that the Garbers and
> Ting engaged in a conspiracy to defraud and
> did defraud National Union in an effort to
> prevent National Union from collecting its
> judgment in the Bond Case.
>
> However, as defendants note, the Ninth
> Circuit in Association of Flight Attendants
> v. Horizon Air rejected the contention that
> an order shifting attorneys' fees can be
> based solely upon a finding of bad faith as
> an element of the cause of action presented
> in the underlying suit.  976 F.2d at 550-551.
> Therefore, that this action involved
> fraudulent conveyances cannot form the basis
> for an award of attorneys' fees under the bad
> faith exception to the American rule.
> National Union must show additional facts to
> justify application of the bad faith
> exception to the American Rule.
>
> In this regard, National Union asserts that
> the bad faith of the Garbers and Betty Ting
> is predicated on the facts and circumstances
> supporting court's conclusion in the Order
> Granting Plaintiff's Motion for Sanctions
> Against Defendant Betty Ting for Spoliation
> of Evidence that "[t]he record in this action
> establishes to the court's satisfaction that
> Betty Ting, in concert with the Garbers, has
> used every tactic, abusive and otherwise, to
> prevent National Union from collecting its
> judgment."
>
> Defendants respond that, other than the
> destruction of documents by Betty Ting,
> National Union has made no attempt to show
> that there was any vexatious, wanton or
> oppressive conduct, other than the fact that
> the Garbers and Ting defended themselves in
> this action.

14

With respect to the destruction of documents by Ting, defendants concede that this act could be construed as falling within the bad faith doctrine. However, defendants argue, the court has already sanctioned Ting heavily for this by entering a default money judgment against her. Furthermore, it is contended that the amount of attorney time focused on that particular incident is small relative to the total amount of the attorneys' fees sought by this motion, noting that the court may award attorneys' fees with respect to a single act. See 10 Moore's Federal Practice 3d § 54.171[2][c][v].

The court concludes that National Union has not shown that an award against Betty Ting of the attorneys' fees incurred by National Union in the Fraudulent Conveyance Action or in the Garbers' bankruptcy should be imposed under the bad faith exception. This court cannot award attorneys' fees merely on the ground that this action involved fraudulent conveyances. Furthermore, the court is not persuaded that it can award attorneys against Betty Ting for fees incurred by National Union in connection with the Garbers' bankruptcy. As this court has previously held, the court is persuaded from the record in this action that the Garbers have taken every conceivable delaying tactic in attempting to prevent National Union from collecting its judgment and completing the prosecution of this action. Many of the arguments made by the Garbers, especially in connection with the motion to dismiss the counterclaim and third party complaint and the subsequent appeal, were frivolous. However, Betty Ting was not a party to the counterclaim and third party complaint. The court is persuaded that Betty Ting has already been sanctioned for the destruction of documents. Therefore, the court will not impose fees incurred in the Fraudulent Conveyance Action or in the Garbers' bankruptcy against Betty Ting under the court's inherent powers.

However, the court concludes for the reasons set forth herein and in the record of this action that the attorneys' fees incurred in

15

> the Fraudulent Conveyance Action and in the
> Garbers' bankruptcy should be imposed against
> the Garbers because of their bad faith,
> vexatious conduct.  The record in these
> actions are replete with frivolous arguments
> and delaying tactics.

The court further ruled that National Union is entitled to an award of the attorneys' fees against the Garbers for fees incurred in the Fraudulent Conveyance Action and the Garbers' bankruptcy and to an award of the attorneys' fees incurred in connection with the Ting bankruptcy from Betty Ting under the "substantial benefit" doctrine.  Finally, in the February 12 Order, the court addressed National Union's evidence that the amount of the attorneys' fee award is reasonable, stating that it appeared from the record before the court that National Union had complied with the requirements for establishing the lodestar. The court further ruled:

> Finally, defendants assert that National
> Union has presented a massive amount of
> paperwork, most of which would be completely
> irrelevant if this court rules that National
> Union is not entitled to an award of
> attorneys' fees or that National Union is
> entitled to only part of the attorneys' fees
> sought, depending on which proceeding the
> fees were incurred in.  Defendants contend
> that it would be appropriate for the court to
> bifurcate its decision, before requiring
> defendants to analyze in detail all of the
> bills which have been submitted, noting that
> Rule 54(d)(2)(C) provides that "[t]he court
> may determine issues of liability for fees
> before receiving submissions bearing on
> issues of evaluation of services for which
> liability is to be imposed by the court."
> Should the court determine that attorneys'
> fees are allowable, defendants request
> additional time to analyze the fees.

16

> Given the history of this action, the court cannot help but look upon this request as anything other than a further and improper attempt by defendants to delay the resolution of this action.  Nonetheless, because of the substantial amount of money involved and because of the legal issues discussed above, the court will allow the requested bifurcation.

The parties subsequently filed further declarations and pleadings in connection with the Motion for Attorneys' Fees.  However, in the meantime, defendants appealed the September 24 Order and the June 7 Order to the Ninth Circuit.  Therefore, no further ruling was made with respect to National Union's Motion for Attorneys' Fees pending the outcome of this appeal.

In <u>National Union v. Garber</u>, 2002 WL 1968376 (2002), the Ninth Circuit affirmed this court's grant of summary judgment on National Union's fraudulent transfer claim relating to the transfers of real property in 1991.  However, the Ninth Circuit further ruled:

> The district court erred in granting summary judgment on National Union's stock transfer claim under Cal.Civ.Code § 3439.04(a) because the court improperly weighed the credibility of the evidence before it in deciding that the Garbers and Ting acted with fraudulent intent in making the transfers.  The court described a number of facts which suggest that the Garbers acted with fraudulent intent but the Garbers also presented evidence that the transfers were made because of Ting's lawsuit and the resulting agreement settling those claims ... Thus, we reverse the district court's grant of summary judgment on the 1988 stock transfer claim.
>
> ...
>
> The district court's findings of fact

17

supporting the Ting sanction order were not
clearly erroneous.  However, the district
court improperly entered a default money
judgment for $213,494.67 against Ting without
considering less severe sanctions.  Whether a
district court properly considered the
adequacy of less drastic sanctions before
dismissing a party's case requires us to
consider findings in which the district court
(1) discusses the feasibility of less drastic
sanctions and explains why such alternate
sanctions would be inappropriate; (2)
implements alternative sanctions before
ordering dismissal; and (3) warns the party
of the possibility of dismissal before
imposing the sanction ... In this case, the
order imposing sanctions does not reflect an
express consideration of lesser sanctions, or
the imposition of alternate sanctions prior
to entry of default.  A conclusory statement
that lesser sanctions would be inappropriate
is insufficient in itself to demonstrate that
the district court actually considered lesser
sanctions ... We also note (1) National Union
was unable to articulate at oral argument why
lesser sanctions, such as the imposition of a
lesser monetary sanction, would not be
appropriate; and (2) that much of the
evidence supporting sanctions related to the
destruction of records relevant to the 1988
stock transfers, rather than to the transfers
of real property that were properly avoided
in the court's order granting summary
judgment.

We vacate the default judgment against Ting
and remand to the district court for
reconsideration in light of the evidence
presented to support the sanctions motion and
the factors relevant to imposing a sanction
of default judgment.

...

The district court's order awarding an
unspecified amount of attorneys fees is not a
final appealable order under 28 U.S.C. § 1291
... We lack appellate jurisdiction to
consider the issue.

...

18

> At oral argument, National Union told us that the bankruptcy court has placed sufficient funds in the possession of National Union to satisfy the judgment against the Garbers, subject to some conditions on the final release of those funds.  As such, it appears to us that the Garber litigation, apart from attorneys fees, may be moot.  However, the relevant records are not part of this appeal, nor otherwise before us.
>
> We vacate and remand this case with the instruction that the district court first determine whether the Garber litigation is moot and appropriate for dismissal.  If not, it may confirm the judgment against the Garbers for the fraudulent transfers.  We vacate the Ting judgment and remand it for further proceedings consistent with this disposition.

While this latest appeal was pending with the Ninth Circuit, the respective trustees of the Garbers and Betty Ting's bankruptcies proceeded with the administration of the respective estates.  An asset in each estate was a residence located in Pacific Grove, California, which was jointly owned by the Garbers and Betty Ting.  One of the deeds of trust avoided by this court was a $350,000 deed of trust that the Garbers transferred to Betty Ting on their interest in the Pacific Grove property.  The two bankruptcy estates agreed to sell the Pacific Grove property and split the proceeds between the two estates.  The Pacific Grove property was sold for $1,310,000.  After payment of the remaining mortgage and costs associated with the sale, each estate received net proceeds of approximately $500,000.  On October 5, 2001, the bankruptcy court in the Garbers' bankruptcy allowed the release to National Union of $218,095.70, which

19

distribution represents the full amount of National Union's underlying judgment plus interest in the Bond Case.[2]

   B.  Mootness.

   The Garbers and Betty Ting (now represented by attorney Thomas H. Armstrong) argue that the satisfaction of National Union's judgment in the Bond Case moots this Fraudulent Conveyance Action and requires its dismissal.

   A case is moot if it has lost its character as a present live controversy.  Aguirre v. S.S. Sohio Intrepid, 801 F.2d 1185, 1189 (9th Cir. 1986).

   The Complaint to Set Aside Fraudulent Conveyance filed in this action prayed for judgment voiding the transfers of stock and the transfers or encumbrances of real property from the Garbers to Betty Ting and for judgment

> 5.  Awarding National Union compensatory damages including interest from the date of judgment and attorneys fees against all defendants above and beyond the previous award of $155,637.39 against the Garbers, as a result of their participation and activities in conspiring to prevent enforcement of the previous judgment against the Garbers.
>
> 6.  Granting National Union such other and further relief as this court deems just and equitable, including an award of attorneys fees in the pursuit of this matter in an amount to be determined by the Court.

---

[2]At the time of this distribution, it was subject to a court order that National Union would have to return the money to the Garbers' bankruptcy estate if the Ninth Circuit reversed this court's avoidance of Betty Ting's deed of trust on the Pacific Grove residence.  However, as noted, the Ninth Circuit affirmed the court's grant of summary judgment in this regard.

In arguing that this action is now moot, defendants rely on the fact that National Union's judgment in the Bond Case has now been paid in full and refer the court to <u>Allard v. DeLorean</u>, 884 F.2d 464 (9th Cir. 1989).

In <u>DeLorean</u>, the trustee of the bankruptcy estate of DeLorean Motor Company filed an action in federal court against John DeLorean and his attorney Weitzman to set aside as fraudulent under California law a conveyance of real property by DeLorean to Weitzman in payment of legal fees on behalf of DeLorean in criminal proceedings.  After a trial, the district court ruled that the conveyance was not a fraudulent conveyance and entered judgment in favor of DeLorean and Weitzman.  The trustee appealed to the Ninth Circuit.  Before judgment was entered, however, the trustee and DeLorean negotiated a settlement of their dispute wherein DeLorean agreed to pay money to the trustee.  Thereafter, the district court, pursuant to a stipulation between the trustee and DeLorean, dismissed the trustee's suit with prejudice and vacated the judgment in favor of defendants.  Weitzman did not sign the stipulation and the district court's dismissal order did not address the trustee's claim against Weitzman.  DeLorean then paid the trustee the amount agreed to in the settlement agreement and the trustee executed a satisfaction of judgment.  The trustee continued his appeal to the Ninth Circuit with respect to the judgment in favor of Weitzman that the conveyance of the real property was not a fraudulent conveyance.  Weitzman successfully argued that the

trustee's appeal should be dismissed as moot because the trustee was no longer a creditor within the meaning of California's Uniform Fraudulent Conveyance Act because the trustee executed a full satisfaction of judgment after DeLorean paid the trustee pursuant to the settlement agreement.

Defendants argue: "In the present case, as in <u>DeLorean</u>, the judgment holder by its own act has satisfied the claim which rendered it a judgment creditor and which was the basis for the fraudulent transfer case in the first place.  There being no further debt, the remainder of this case must be dismissed as moot."  Defendants further argue:

> Dismissal for mootness does not impact the judgment which avoided the transfer of real property from the [Garbers] to Ting in 1991. That, after all, was the decision by the Ninth Circuit, upholding this avoidance. However, the remainder of the case - for example, any attempt to avoid the transfers of the stock to Ting in 1988 - is moot ... So, too, would be further attempts by NU to recover money against Ting under Cal.Civ.Code Section 3439.08(a) (right to recover judgment for money against transferee).  NU must be a 'creditor' with a 'claim' as defined under Cal.Civ.Code Section 3439.01.  NU no longer has such a claim because it has been paid in full.

National Union responds that <u>DeLorean</u> is not controlling because this Fraudulent Conveyance Action is not just a proceeding to enforce its judgment in the Bond Case, but also seeks compensatory damages and attorneys' fees and costs.

To the extent that National Union is concerned that a finding of mootness would negate its ability to seek attorneys

22

1   fees, National Union's concern is misplaced.  As noted by

2   defendants, "[n]o Article III case or controversy is needed with

3   regard to attorneys' fees as such, because they are but an

4   ancillary matter over which the district court retains equitable

5   jurisdiction even when the underlying case is moot."  Zucker v.

6   Occidental Petroleum Corp., 192 F.3d 1323, 1329 (9th Cir. 1999),

7   cert. denied, 529 U.S. 1066 (2000).  The same is true with

8   respect to a determination of the amount of sanctions to be

9   imposed on Betty Ting because of her spoliation of evidence.  See

10  Cooter & Gell v. Hartmarx Corporation, 496 U.S. 384, 395-396

11  (1990).

12       However, to the extent that National Union seeks to avoid a

13  finding of mootness in order to recover "compensatory damages",

14  National Union conceded at oral argument that the only

15  "compensatory damages" sought in the Fraudulent Conveyance Action

16  are attorneys' fees and costs incurred by National Union in

17  setting aside the fraudulent conveyances and obtaining the

18  wherewithal therefrom to fully satisfy the judgment in the Bond

19  Case.[3]

20       Therefore, the court concludes that the satisfaction of the

21  judgment in the Bond Case moots all issues in this action except

22  those issues relating to the sanction to be imposed on Betty Ting

23  because of her spoliation of evidence and those issues relating

24  _____

25       [3]The court's research indicates that the California Uniform
    Fraudulent Transfers Act does not allow an award of damages.  See
26  Forum Insurance Company v. Devere Limited, 151 F.Supp.2d 1145
    (C.D.Cal. 2001).

to National Union's request for an award of attorneys' fees and costs against the Garbers and Ting.

    C.  <u>Betty Ting's Bad Faith</u>.

Instead of the default money judgment, National Union proposes as an alternative sanction against Ting an award to National Union of the attorneys' fees attributable to her bad faith conduct as outlined in National Union's initial motion for attorneys' fees.

Ting argues that the court should not consider National Union's request because National Union did not appeal the February 12 Order declining to impose award attorneys' fees against Betty Ting for bad faith and did not request reconsideration of the issue under Rules 59(e) or 60(b), Federal Rules of Civil Procedure, when the February 12 Order was filed.

However, as the Ninth Circuit ruled, the February 12 Order was not a final appealable order. Therefore, National Union could not have appealed this court's decision not to award attorneys' fees against Betty Ting under the bad faith exception. Rule 59(e) has no application to this motion because the February 12 Order was not a judgment. Rule 60(b) has no application for the same reason, i.e., the February 12 Order was not a final order.

Ting further argues that the law of the case doctrine precludes this court from revisiting its prior ruling that attorneys' fees would not be awarded against Betty Ting under the bad faith exception.

1    However, the law of the case doctrine does not apply to a

2    district court's reconsideration of its own rulings if those

3    rulings have not been appealed.  <u>See United States v. Cote</u>, 51

4    F.3d 178, 181 (9th Cir. 1995)("'The law of the case doctrine

5    states that the decision of an appellate court on a legal issue

6    must be followed in all subsequent proceedings in the same

7    case.'").  Furthermore, because the sanction imposed by this

8    court against Ting for spoliation of evidence has been reversed

9    by the Ninth Circuit and the issue of an appropriate sanction

10   remanded, circumstances have changed.  This court is not

11   precluded from the examination of an award of attorneys fees

12   under the bad faith doctrine against Betty Ting as a sanction for

13   the destruction of evidence.

14    Federal courts have equitable power to award attorneys' fees

15   under the bad faith exception to the American Rule.  <u>Association</u>

16   <u>of Flight Attendants v. Horizon Air</u>, 976 F.2d 541, 548 (9th Cir.

17   1992).  As explained in <u>Dogherra v. Safeway Stores, Inc.</u>, 679

18   F.2d 1293, 1298 (9th Cir. 1982):

19           A court may assess attorneys' fees 'when the
             losing party has "acted in bad faith,
20           vexatiously, wantonly, or for oppressive
             reasons."' ... 'Bad faith may be found, not
21           only in the actions that led to the lawsuit,
             but also in the conduct of the litigation.'
22           ... An award of attorneys' fees for bad faith
             'is punitive and the penalty can be imposed
23           "only in exceptional cases and for dominating
             reasons of justice."'
24

25   In <u>Primus Automotive Financial Services v. Batarse</u>, 115 F.3d 644,

26   648-649 (9th Cir. 1997), the Ninth Circuit further explained:

25

> Before awarding sanctions under its inherent powers, however, the court must make an explicit finding that counsel's conduct 'constituted or was tantamount to bad faith.' ... Such a finding is especially critical when the court uses its inherent powers to engage in fee-shifting ....
>
> A finding of bad faith is warranted when an attorney 'knowingly or recklessly raises a frivolous argument, or argues a meritorious argument for the purpose of harassing an opponent.' ... A party also demonstrates bad faith by 'delaying or disrupting the litigation or hampering enforcement of a court order.' ... The bad faith requirement sets a high threshold ....
>
> ...
>
> We recognize that the district court is intimately familiar with the course of the litigation and occupies the best position from which to determine whether to award sanctions.  However, there are 'factual and legal prerequisites' to the district court's exercise of its broad power ... We insist on the finding of bad faith because it ensures that 'restraint is properly exercised,' .. and it preserves a balance between protecting the court's integrity and encouraging meritorious arguments ....

National Union argues that the court should award the full amount of the $448,451.25 in attorneys' fees that it is requesting jointly against the Garbers and Betty Ting based on Betty Ting's bad faith.[4]

In so arguing, National Union refers to the June 7 Order.[5]

---

[4]The February 12 Order awards the attorneys fees incurred to the date of that Order on the Garbers based on their bad faith.

[5]The Ninth Circuit in its Memorandum ruled that "[t]he district court's findings of fact supporting the Ting sanction order were not clearly erroneous."  Therefore, contrary to defendants' assertion, the facts found by the court in the June 7 Order do not need to be revisited.

The factual basis of the June 7 Order was that Betty Ting intentionally destroyed financial records of Golden Valley Aero, Inc. and Emilia Chua Ting, M.D., Inc. needed by National Union to establish the value of the two corporations as of 1988 and that Betty Ting consciously disregarded her obligation to preserve the financial records of the two corporations after the Fraudulent Conveyance Action was filed by National Union.

Defendants argue that the reversal by the Ninth Circuit of this court's grant of summary judgment to National Union with respect to the stock transfers negates any finding of bad faith or sanctionable conduct by Betty Ting in destroying or failing to preserve the financial records of the two corporations.

As noted, the Ninth Circuit reversed because of an issue of fact concerning the Garbers' intent in making the stock transfers to Betty Ting.  The Garbers argue:

> On the facts, the only rational basis for finding that Ting destroyed the tax records is based on a finding that she was involved in an intentionally fraudulent enterprise – for which there is now no decisional record, given the reversal of the Summary Judgment Order's findings of actual fraud.  Moreover, the 'misconduct penalized must relate to matters in controversy in such a way as to interfere with the rightful decision of the case.'  Halaco Eng'g Co. v. Costle, 843 F.2d 376, 381 (9th Cir. 1988).  That would have been true only with respect to transfers void in 1988, and neither the avoidable transfer of stock (the property to be valued) or the intent to defraud by such transfer can be found on the present record ... At most, this Court can rule that the tax records might have been of some consequence and ought not to have been destroyed.  It can sanction for the amount actually expended by NU in

27

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

> bringing the motion which resulted in the
> Sanctions Order.  Anything beyond that would
> be excessively punitive, given particularly
> that NU was paid on the Bond Case judgment in
> full, which was the purpose of the original
> sanction.

At issue before the court is the appropriate sanction to be imposed on Betty Ting for spoliation of evidence (given that the Ninth Circuit has reversed the sanction previously imposed). That the Ninth Circuit subsequently found an issue of fact concerning the Garbers' intent in transferring the stock of the two corporations to Betty Ting does not detract from the court's findings that Betty Ting deliberately destroyed or failed to conserve financial records that would have assisted National Union in valuing that stock for purposes of the Fraudulent Conveyance Action.  As noted, even defendants recognize this.

However, there is no basis for imposing on Betty Ting as a sanction for the spoliation of evidence joint liability for all attorneys' fees incurred by National Union in prosecuting this fraudulent conveyance action.  In the February 12 Order, the court stated:

> The court concludes that National Union has
> not shown that an award against Betty Ting of
> the attorneys' fees incurred by National
> Union in the Fraudulent Conveyance Action or
> in the Garbers' bankruptcy should be imposed
> under the bad faith exception.  This court
> cannot award attorneys' fees merely on the
> ground that this action involved fraudulent
> conveyances.  Furthermore, the court is not
> persuaded that it can award attorneys [fees]
> against Betty Ting for fees incurred by
> National Union in connection with the
> Garbers' bankruptcy.  As this court has
> previously held, the court is persuaded from

28

the record in this action that the Garbers
have taken every conceivable delaying tactic
in attempting to prevent National Union from
collecting its judgment and completing the
prosecution of this action.  Many of the
arguments made by the Garbers, especially in
connection with the motion to dismiss the
counterclaim and third party complaint and
the subsequent appeal, were frivolous.
However, Betty Ting was not a party to the
counterclaim and third party complaint.  The
court is persuaded that Betty Ting has
already been sanctioned for the destruction
of documents.  Therefore, the court will not
impose fees incurred in the Fraudulent
Conveyance Action or in the Garbers'
bankruptcy against Betty Ting under the
court's inherent powers.

The court is not persuaded to rule any differently except to

impose a sanction against Betty Ting for the spoliation of

evidence.  Imposition of the entire attorneys' fees award against

Betty Ting under the bad faith doctrine because of the spoliation

of evidence would, in the court's opinion, be improper and

unfair.  The court concludes that the appropriate sanction is to

award National Union its attorneys' fees and costs incurred in

bringing and arguing the spoliation of evidence motion in this

court.  However, this sanction will not include fees incurred by

National Union in connection with the appeal of the June 7 Order

because, as noted, Betty Ting was partially successful in that

appeal.

National Union further argues that the court should impose

on Betty Ting the attorneys' fees incurred by National Union in

connection with Betty Ting's bankruptcy, contending that this

bankruptcy is evidence of Ting's participation in the scheme to

29

1   prevent or delay National Union's satisfaction of its judgment in

2   the Bond Case.

3       As noted <u>supra</u>, Betty Ting filed a Chapter 13 bankruptcy

4   petition in the Northern District of California after the court

5   had granted summary judgment to National Union and after National

6   Union's motion for spoliation of evidence was filed and briefed.

7   According to National Union, Betty Ting admitted under oath that

8   the reason she filed the bankruptcy petition was to prevent

9   National Union from foreclosing on the Pacific Grove property in

10  satisfaction of its judgment in the Bond Case.  Additionally,

11  several weeks prior to the filing of the bankruptcy petition,

12  Betty Ting filed a homestead declaration on the Pacific Grove

13  property.  After objecting to Ting's initial Chapter 13 plan and

14  two amended plans, the Bankruptcy Court, after a two day trial,

15  ordered Ting to either dismiss the bankruptcy or convert the

16  bankruptcy to a Chapter 7.  National Union asserts that "[i]n

17  light of Ting's antics and the fact that the bankruptcy was filed

18  in the Northern District, National Union incurred a substantial

19  amount of attorneys' fees with respect to her bankruptcy."

20      This court did not previously impose attorneys' fees against

21  Betty Ting incurred by National Union in Betty Ting's bankruptcy

22  proceedings.  Nothing has changed (other than the reversal of the

23  sanction for spoliation of evidence).  Therefore, there is no

24  basis before the court to reconsider its prior ruling.

25      Consequently, the court concludes that the only attorneys'

26  fees to be imposed on Betty Ting under the bad faith exception

1  are those fees incurred by National Union in bringing and arguing

2  the motion for a sanction for spoliation of evidence.

3       D.   Reconsideration of February 12 Order.

4       The February 12 Order ruled that National Union is entitled

5  to reasonable attorneys' fees against the Garbers and/or Betty

6  Ting on (1) the underlying judgment theory; (2) the bad faith

7  exception; and (3) the substantial benefit theory.  As National

8  Union notes, the only issue that was not resolved by the February

9  12 Order was the reasonableness of the fee award and that issue

10 was not resolved when the February 12 Order was filed because

11 defendants utterly failed to address the reasonableness of the

12 attorneys' fees sought by National Union.

13      In responding to this Updated Motion for Attorneys Fees, the

14 Garbers and Betty Ting essentially request reconsideration by

15 this court of its rulings made in the February 12 Order with

16 respect to National Union's entitlement to attorneys' fees.

17      Because of the importance of the arguments made by the

18 parties herein and the amount of attorneys' fees at issue, the

19 court exercises its discretion and addresses the arguments made

20 by the Garbers in seeking reconsideration of the February 12

21 Order.  As noted above, the court specifically required National

22 Union to address the merits of one of the claimed grounds for

23 reconsideration.

24      1.   Underlying Judgment.

25      In the February 12 Order, the court ruled in pertinent part

26 that National Union is entitled to an award of its attorneys'

31

1  fees incurred in the Fraudulent Conveyance Action from the

2  Garbers:

> The Garbers respond that the fact that there
> was an attorneys' fee provision in the
> underlying bond agreement is irrelevant
> because National Union's action in this case
> is based upon its judgment against the
> Garbers, not the underlying bond agreement.
> They assert that the contractual obligations
> of the Garbers merged into the judgment in
> the Bond Case and were extinguished.  In so
> asserting, they refer the court to
> Restatement, Judgments 2d, § 18 (1980):

> > Judgment for Plaintiff - the
> > General Rule of Merger

> > When a valid and final personal
> > judgment is rendered in favor of
> > the plaintiff:

> > (1) The plaintiff cannot thereafter
> > maintain an action on the original
> > claim or any part thereof, although
> > he may be able to maintain an
> > action upon the judgment ....

> Comment k to Section 18 provides that "[w]hen
> the judgment is that of a federal court,
> federal law in general governs its effects."
> Relying on these provisions, defendants
> assert that because the judgment in the Bond
> Case was a federal judgment, federal law
> controls the question of whether attorneys'
> fees can be awarded with respect to that
> judgment.

> The court does not agree.  The present action
> is an action to set aside fraudulent
> conveyances pursuant to the Uniform
> Fraudulent Transfer Act, California Civil
> Code §§ 3439 et seq.  The basis for this
> court's subject matter jurisdiction is
> diversity.  As noted above, California law
> determines whether and the extent to which
> National Union is entitled to attorneys' fees
> in this action.  The question is whether
> California law allows National Union to
> predicate an award of attorneys' fees in this

32

action on a contract provision which supplied the basis for liability and attorneys' fees in a prior judgment which this action is seeking to enforce.

In this regard, National Union refers the court to California Code of Civil Procedure § 685.070(a)(6):

> (a) The judgment creditor may claim under this section the following costs of enforcing a judgment:
>
> ...
>
> (6) Attorney's fees, if allowed by Section 685.040.

California Code of Civil Procedure § 685.040 provides:

> The judgment creditor is entitled to the reasonable and necessary costs of enforcing a judgment. Attorney's fees incurred in enforcing a judgment are not included in costs collectible under this title unless otherwise provided by law.  Attorney's fees incurred in enforcing a judgment are included as costs collectible under this title if the underlying judgment includes an award of attorney's fees to the judgment creditor pursuant to subparagraph (A) of paragraph (10) of subdivision (a) of Section 1033.5.

The Garbers argue that National Union cannot rely on these statutory provisions because they were not effective until January 1, 1993, well after the Bond Case judgment entered by this court was final and well after the transfers to Ting were made. Noting that "[a]s a general rule of construction, statutes are not given retroactive effect unless the intent of the Legislature cannot be otherwise satisfied" and that "'when [the Legislature] intends a statute to operate retroactively it uses clear language to accomplish that purpose'",

<u>Balen v. Peralta Junior College Dist.</u>, 11 Cal.3d 821, 828 (1974), defendants argue that National Union cannot rely on these statutes as a basis for an award of attorneys' fees in this action.

In reply, National Union refers the court to <u>Miller v. Givens</u>, 30 Cal.App.4th 18 (1994). In <u>Miller</u>, Miller sued Buchignani and Levy on an agreement containing an attorneys' fees clause.  Buchignani and Levy prevailed at trial and a judgment was entered in their favor for costs and attorneys' fees in July, 1989.  Buchignani assigned all of his right, title and interest to Givens in November, 1992.  On September 1, 1993, Givens filed a memorandum of costs, seeking, among other items, postjudgment attorneys' fees.  Miller opposed this memorandum of costs, asserting in pertinent part that at the time the judgment was entered Section 685.040 did not allow for such fees.  The trial court determined that an award of postjudgment attorneys' fees would require an impermissible retroactive application of the amendment of Section 685.040.  The Court of Appeals held:

> In 1989, at the time the judgment was entered, section 685.040 provided: 'The judgment creditor is entitled to the reasonable and necessary costs of enforcing a judgment.  Attorney's fees incurred in enforcing a judgment are not included in costs collectible under this title unless otherwise provided by law.'

> The section was amended in 1992 to add the following sentence: 'Attorney's fees incurred in enforcing are included as costs collectible under this title if the underlying judgment included an award of attorney's fees to the judgment creditor pursuant to subparagraph (A) of paragraph (10) of subdivision (a) of Section 1033.5.'  Subdivision (a)(10)(A) of section 1033.5 allows attorney fees

34

to be recoverable as costs when authorized by contract.

The effective date of the amendment was January 1, 1993 ... It is undisputed that the amendment should not be applied retroactively.  The only question presented to us by the parties is whether an award for fees incurred after the effective date of the amendment constitutes a retroactive application.

Miller cites <u>Helm v. Bollman</u> (1959) 176 Cal.App.2d 838, 841 ... for the proposition that '"A statute will not be given a retroactive construction by which it will impose liabilities not existing at the time of its passage, or which will affect an existing liability to the detriment of defendant ...."' ...'.

But the amendment, as Givens seeks to apply it here, had no retroactive effect on Miller's existing liabilities.  Givens is not claiming the right to fees incurred in an effort to collect the judgment prior to the effective date of the amendment.  Givens's application of the amendment is prospective only.  He relies on events that occurred after the effective date: Miller's failure to pay the judgment and Givens's efforts to collect.  That the judgment existed prior to the amendment does not mean Givens is seeking a retroactive application of the amendment.  'A statute does not operate retroactively merely because some of the facts or conditions upon which its application depends came into existence before the enactment.' ....

The source of the presumption that

35

a statute will not be retroactively applied is the general consensus that notice of a rule should be given in advance of the actions to be judged ... 'Application of a statute is retroactive only when it gives a different and potentially unfair legal effect to actions taken in reliance on the preenactment law.' ... Here the amendment gives no different or potentially unfair legal effect to Miller's prior actions.  It is Miller's subsequent action in failing to pay the judgment from which the fees incurred here flow.

Chelios v. Kaye (1990) 219 Cal.App.3d 75 ... is of no help to Miller.  There the court held that an attorney fees clause in a contract was merged with the judgment, and thus could not be the basis for the imposition of postjudgment attorney fees.  But Chelios was decided under section 685.040 prior to the 1992 amendment.  The 1992 amendment was obviously intended to change the rule applied in Chelios.

30 Cal.App.4th at 21-22.

In the court's opinion, Miller disposes of the Garbers' argument that, because the Bond Case judgment was final before the effective date of the amendment to Section 685.040, National Union cannot rely on these statutes as a basis for an award of attorneys' fees in this case.  As noted above, all of the attorneys' fees at issue in this motion were incurred in connection with the Fraudulent Conveyance action and related proceedings, which action was not filed until 1994.

In moving for reconsideration of this ruling in the February 12 Order, the Garbers contend that attorneys fees for enforcing a judgment must be sought in the action in which the judgment was

36

obtained, i.e., the Bond Case, and not in the Fraudulent

Conveyance Action to recover properties in order to satisfy that

judgment.

In so arguing, the Garbers refer the court to Section

685.070, which provides in pertinent part:

> (a) The judgment creditor may claim under
> this section the following costs of enforcing
> a judgment:
>
> ...
>
> (6) Attorneys' fees, if
> allowed by Section 685.040.
>
> (b) Before the judgment is fully satisfied
> but not later than two years after the costs
> have been incurred, the judgment creditor
> claiming costs under this section shall file
> a memorandum of costs with the court clerk
> and serve a copy on the judgment debtor ....

Section 685.090(a)(2) provides that costs are added to and become

part of the judgment "[i]f a memorandum of costs is filed

pursuant to Section 685.070 ...."   The Garbers assert that this

memorandum of costs must be filed in the Bond Case and, because

National Union has never done so, National Union is not entitled

to recover any attorneys' fees from the Garbers incurred in order

to enforce the Bond Case judgment.[6]

In opposing the Garbers' contention, National Union refers

the court to California Code of Civil Procedure § 685.080, which

provides in pertinent part:

---

[6]The Garbers further argue that, even if the motion for
attorneys fees in this case is deemed to be a memorandum pursuant
to the California Code of Civil Procedure, National Union would
only be entitled to fees incurred in 1998 to 2000.

> (a) The judgment creditor may claim costs authorized by Section 685.040 by noticed motion.  The motion shall be made before the judgment is satisfied in full, but not later than two years after the costs have been incurred.  The costs claimed under this section may include, but are not limited to, costs that may be claimed under Section 685.070 and costs incurred but not approved by the court or referee in a proceeding under Chapter 6 (commencing with Section 708.010) of Division 2.

> (b) The notice of motion shall describe the costs claimed, shall state their amount, and shall be supported by an affidavit of a person who has knowledge of the facts stating that to the person's best knowledge and belief the costs are correct, are reasonable and necessary, and have not been satisfied. The notice of motion shall be served on the judgment debtor.  Service shall be made personally or by mail.

> (c) The court shall make an order allowing or disallowing the costs to the extent justified under the circumstances of the case.

National Union argues that there is no specific requirement in the statute that the motion described in Section 685.080 be filed in the same action in which the judgment was entered, i.e., in the Bond Case.  Therefore, National Union argues, there is nothing in the California statutory scheme preventing National Union from filing the motion for attorneys' fees described in Section 685.080 in the Fraudulent Conveyance Action brought to enforce the judgment in the Bond Case.

The Garbers respond that nothing in California's statutory scheme supports National Union's construction.  In so arguing, the Garbers note that a judgment debtor is not normally made a party to a fraudulent conveyance action.  See <u>TWM Homes, Inc. v.</u>

38

1  _Atherwood Realty & Inv. Co._, 214 Cal.App.2d 826, 848 (1963)("The

2  transferrees ... are necessary parties defendant in an action to

3  set aside a fraudulent conveyance ... The transferor ..., though

4  a proper party defendant is not a necessary one."  The Garbers

5  further note both Sections 685.070(b) and 685.080(b) require

6  service of the memorandum or motion upon the judgment debtor.

7  The Garbers contend:

8          [T]he argument that one can use CCP Section
           685.080 as a means of taxing costs against a
9          judgment debtor in a fraudulent conveyance
           case conveniently skips the point that
10         normally such judgment debtors are not even
           defendants in such cases.  Knowing this, the
11         legislature therefore could not have
           contemplated the use of such a procedure in a
12         fraudulent transfer case.  In fact, there is
           no procedure available in California to
13         subject the judgment debtor to an award of
           any costs, including attorneys fees, other
14         than by adding them to the judgment under CCP
           Sections 685.040 and 685.090.  No court other
15         than the entering the judgment in the
           proceeding giving rise to the judgment may
16         add to the judgment.

17  The Garbers refer the court to _Imperial Bank v. Pim Electric,_

18  _Inc.,_ 33 Cal.App.4th 540 (1995) and to _Mollola Holdings, Inc. v._

19  _Akers,_ 100 Cal.App.4th Supp. 6 (2002) in contending that the

20  California courts strictly apply the statutory procedural

21  requirements for obtaining attorneys in judgment enforcement

22  cases.  Thus, in _Imperial Bank_, the Court of Appeal held in

23  pertinent part:

24         [T]he Bank seeks an award of attorney fees on
           appeal on the ground that this appeal
25         involves the enforcement of a money judgment
           based upon a contract providing for attorney
26         fees.  (Civ.Code, § 1717.)

Attorney fees on appeal are ordinarily recoverable only if authorized by statute ... Statutory authorization for the recovery of attorney fees incurred in trial court proceedings *necessarily* includes attorney fees incurred on appeal unless the statute specifically provides otherwise ... The relevant statutes regarding recovery of attorney fees in enforcing a judgment are sections 685.040 and 685.070, subdivision (a)(6).  Section 685.040 provides as follows:  'The judgment creditor is entitled to the reasonable and necessary costs of enforcing a judgment.  Attorney's fees incurred in enforcing a judgment are not included as costs collectible under this title unless otherwise provided by law.  Attorney's fees incurred in enforcing a judgment are included as costs collectible under this title *if the underlying judgment includes an award of attorney's fees to the judgment creditor pursuant to subparagraph (a) of paragraph (10) of subdivision (a) of section 1033.5.'* ....

Section 685.070 provides in relevant part:  '(a) The judgment creditor may claim under this section the following costs of enforcing a judgment; [¶] ... [¶ (6) Attorney's fees, if allowed by Section 685.040.'

Although it appears the underlying judgment was based upon a note and guarantees which provided for recovery of attorney fees, the judgment itself does not award attorney fees and there is nothing in the record to indicate that the trial court awarded attorney fees pursuant to Civil Code section 1717 or any other statute.  The absence of any fee award in the underlying judgment precludes the recovery of fees as costs in the trial court for enforcing the money judgment, and necessarily precludes an award of attorney fees on this appeal.

33 Cal.App.4th at 557-558.  In <u>Mollala Holdings</u>, the judgment creditor who had obtained a default judgment on a contract which included attorneys' fees and costs, moved the court for an award

40

of postjudgment attorney fees.  The trial court denied the

motion, which denial was affirmed:

> In the case at bar, the court clerk awarded
> attorney fees [pursuant to the schedule set
> forth in a rule of court allowing the clerk
> to award attorney fees in a default
> judgment].  While appellant's default
> judgment obtained from the court clerk below
> was based upon contract, the attorney fees
> were awarded in accordance with the court's
> *schedule* following the default judgment, and
> not as a cost item pursuant to the contract
> at issue.  Appellant could have obtained a
> judgment through a court hearing, and not
> simply through a clerk's judgment by default.
> In securing the clerk's judgment by default,
> appellant implicitly accepted an attorney
> fees award pursuant to local rule 6.1.1, thus
> eschewing the section 1033.5, subdivision
> (a)(10) alternative.  Appellant's election of
> that procedure, therefore, precludes post-
> judgment attorney fees.

100 Cal.App.4th Supp. at 8.

National Union further argues that the Garbers' contention

is belied by federal procedural rules.  In so arguing, National

Union notes that "'federal courts sitting in diversity

jurisdiction apply state substantive law and federal procedural

law.'" Freund v. Nycomed Amersham, 347 F.3d 752, 761 (9th Cir.

2003)(quoting Gasperini v. Ctr. for Humanities, Inc., 518 U.S.

415, 427 (1996).  National Union cites Rule 69(a), Federal Rules

of Civil Procedure, which provides in pertinent part:

> Process to enforce a judgment for the payment
> of money shall be by a writ of execution,
> unless the court directs otherwise.  The
> procedure on execution, on proceedings
> supplementary to and in aid of a judgment,
> and in proceedings on and in aid of execution
> shall be in accordance with the practice and
> procedure of the state in which the district

41

> court is held, existing at the time the
> remedy is sought, except that any statute of
> the United States governs to the extent that
> it is applicable.

National Union reasons that, because the Federal Rules of Civil Procedure have the force of a federal statute, see <u>Sibbach v. Wilson & Co., Inc.</u>, 312 U.S. 1, 13 (1941), Rule 54(d), Federal Rules of Civil Procedure, governs the award of attorneys fees requested by these motions.  Rule 54(d)(2), Federal Rules of Civil Procedure, provides in pertinent part:

> (A) Claims for attorneys' fees and related
> non-taxable expenses shall be made by motion
> unless the substantive law governing the
> action provides for the recovery of such fees
> as an element of damages to be proved at
> trial.

> (B) Unless otherwise provided by statute or
> order of the court, the motion must be filed
> no later than 14 days after entry of
> judgment; must specify the judgment and the
> statute, rule, or other grounds entitling the
> moving party to the award; and must state the
> amount or provide a fair estimate of the
> amount sought.  If directed by the court, the
> motion shall also disclose the terms of any
> agreement with respect to fees to be paid for
> the services for which claim is made.

National Union further notes that the Note to the 1993 amendments to Rule 54 state that "[f]ee awards should be made in the form of a separate judgment under Rule 58 since such awards are subject to review in the court of appeals."  National Union then contends that the "only remaining question ... is whether the Rule 54 motion must be brought in the action in which the judgment was entered, rather than in a supplementary proceeding being pursued to enforce that judgment."  National Union argues that, because

42

the Bond Case and the Fraudulent Conveyance Action involve the
same parties, the same court, and the same district court judge,
"it would be an elevation of form over substance to require that
a motion be made in the Bond Case."

However, as ruled in the February 12 Order, federal courts
are required to apply state law in diversity actions with regard
to the allowance or disallowance of attorneys' fees. Schultz v.
Lamb, 591 F.2d 1268, 1273 (9th Cir. 1978). In addition, state
law controls the calculation of attorneys' fees in diversity
cases. Mangold v. California Public Utilities Com'n, 67 F.3d
1470, 1478-1479 (9th Cir. 1985). Furthermore, as explained in
Sibbach, in cases involving a choice between the Rules of Civil
Procedure and a state law, the Rules Enabling Act and cases
construing it constitute the relevant standard. Under the Rules
Enabling Act, a federal rule of decision is valid if it really
regulates procedure and does not abridge, enlarge or modify any
substantive right. 312 U.S. at 14. A rule promulgated under the
Rules Enabling Act may be invalid even if it does regulate
procedure, if it also operates to affect a substantive right.
Huff v. Shumate, 360 F.Supp.2d 1197, 1201 (D.Wyo. 2004). Because
the Ninth Circuit has ruled that state law applies to the
determination and calculation of attorneys' fees in diversity
cases, National Union's attempt to circumvent the Garbers'
arguments by reference to Rules 54 and 69, Federal Rules of Civil
Procedure, is unavailing.

National Union further argues that, even if it must proceed

43

by filing a motion for an award of attorneys' fees in the Bond
Case, the time for filing that motion has not yet elapsed.  In so
arguing, National Union refers to the Garbers' contention that
the National Union would have violated the automatic stay if it
filed a memorandum of costs in the Bond Case in accordance with
California Code of Civil Procedure § 685.070(b).

The Garbers contended in their initial opposition to the
updated motion for attorneys' fees that, even if National Union
had filed a memorandum in the Bond Case after the Garbers had
filed their Chapter 7 bankruptcy petition, that filing would have
violated the automatic stay set forth in 11 U.S.C. § 362(a)(1),
(2) and (6).  The Garbers concede that National Union moved for
and obtained relief from the automatic stay in 1996 but contend
that relief from stay covered only proceedings in this Fraudulent
Conveyance Action and in Adversary Proceeding No. 94-1361, which
Adversary Proceeding had been withdrawn to this court.

National Union concedes that it never sought or obtained
relief from the automatic stay to proceed with any action in the
Bond Case because National Union believed that it was appropriate
to seek an award of all of its attorneys' fees under any
available theories in this Fraudulent Conveyance Action.
National Union also concedes that the automatic stay remains in
effect.

National Union then refers the court to 11 U.S.C. § 108(c),
which provides in pertinent part:

Except as provided in section 524 of this

44

> title, if applicable nonbankruptcy law, an
> order entered in a nonbankruptcy proceeding
> or an agreement fixes a period for commencing
> or continuing a civil action in a court other
> than a bankruptcy court on a claim against
> the debtor ..., and such period has not
> expired before the date of the filing of the
> petition, then such period does not expire
> until the later of -
>
> > (1) the end of such period,
> > including any suspension of such
> > period occurring on or after the
> > commencement of the case; or
> >
> > (2) 30 days after notice of the
> > termination or expiration of the
> > stay under section 362, 922, 1201,
> > or 1301 of this title, as the case
> > may be with respect to such claim.

Relying on Section 108(c), National Union argues that the Garbers' contention that the time for National Union to filed a motion for award of attorneys' fees pursuant to California Code of Civil Procedure § 685.050 in the Bond Case has expired because the judgment in the Bond Case has already been satisfied and it has been over two years since some of the costs were incurred in the Bond Case is incorrect.  National Union contends that it would be precluded from filing a motion in the Bond Case only if the time for doing so set forth in Section 685.050 ran before the Garbers filed their bankruptcy petition in September, 1994. National Union further asserts that "[t]he time period would have run if the Bond Case judgment was satisfied before the bankruptcy filing or if any of the fees requested pursuant to the motion for attorneys' fees were incurred more than two years before the bankruptcy filing."  Referring to the Declaration of Leslie

45

Beatus, National Union contends that the earliest fees sought in connection with the motion are for acts on February 24, 1993, which is less than two years prior to the filing by the Garbers of their bankruptcy petition.

Although the Garbers do not dispute that the tolling provision in Section 108(c) is applicable, they contend that it does not salvage National Union's request for attorneys' fees because the underlying judgment in the Bond Case has been satisfied.

With regard to the issue of satisfaction of the underlying judgment in the Bond Case, National Union contends that the fees incurred by it in enforcing that judgment may be added to the principal amount of the judgment as post-judgment interest. Therefore, National Union argues, the amount of the Bond Case judgment "remains fluid" and cannot be "fully satisfied" unless and until all of the post-judgment interest and the costs of enforcement (including attorneys' fees) to the date of satisfaction have been paid.

In so arguing, National Union contends that interim distribution by the bankruptcy trustee on October 24, 2001 in the amount of $222,212.45 did not satisfy in full the Bond Case judgment. As noted above, the trustees of the Garber and Ting bankruptcies jointly sold property owned by the Garbers and Ting in Pacific Grove. Each estate received approximately $500,000 net proceeds from this sale. National Union had a lien on the Pacific Grove property as a result of its abstract of judgment

46

from the Bond Case judgment.  As part of the sale, the Bankruptcy

Court ordered the trustee to set aside the amount of National

Union's lien in an interest bearing account pending further order

of the Bankruptcy Court.  Thereafter, National Union filed a

motion in the Bankruptcy Court for release of the funds held by

the trustee, which motion was granted.  However, the Garbers

filed a motion for reconsideration, requesting the Bankruptcy

Court modify its order to make clear that the distribution of

funds to National Union was merely an early distribution and

would not have preclusive effect on any action that might be

brought in the future to recover those funds from National Union.

The Bankruptcy Court granted the Garbers' motion for

reconsideration in part, ruling:

> The order allowing release of the funds is
> not intended to have any preclusive effect
> whatsoever on the obligations of NATIONAL
> UNION to return the funds, not return the
> funds on the happening of some subsequent
> event.  It is not intended to require them to
> return the funds, it is not intended to give
> them an argument that they don't have to
> return the funds.  It is intended to be
> entirely neutral on that subject.

National Union contends that the Garbers' motion for

reconsideration filed in the Bankruptcy Court is evidence of

their intention to sometime attempt to force National Union to

return the $222,212.45 distribution to the bankruptcy estate.

Furthermore, as of the time National Union's supplemental brief

was filed, the trustee of the Garber's estate had not made a

final report and filed a final account of the administration of

47

the estate with the Bankruptcy Court.  Because the bankruptcy case is not closed until this happens, see In re Wade, 991 F.2d 402 (7th Cir.), cert. denied, 510 U.S. 870 (1993), National Union argues that a risk remains that it might have to return the distributed proceeds to the Garbers' bankruptcy estate. Consequently, National Union contends, the Bond Case judgment cannot be considered to have been satisfied in full by that distribution.

National Union further argues that the distribution of $222,212.45 did not fully satisfy the Bond Case judgment.  As noted above, judgment was entered on March 6, 1992 in favor of National Union in the Bond Case in the total amount of $151,327.39.  An additional judgment in the amount of $4,310 was entered by the Ninth Circuit on January 14, 1994.  Pursuant to 28 U.S.C. § 1961, interest accrued on the judgment entered on March 6, 1992 at the rate of 4.55% per annum and on the judgment entered on January 14, 1994 at the rate of 3.67% per annum. Furthermore, National Union notes, the trustee's letter dated October 24, 2001 enclosing the estate's check in the amount of $222,212.45 required that National Union hold the funds in trust pending the outcome of the Garbers' motion for reconsideration set for hearing on November 21, 2001.  Therefore, National Union contends, through October 24, 2001, the total amount of the Bond Case judgment was $223,211.99, approximately $1,000 more than was distributed by the trustee to National Union.  National Union further contends, through November 21, 2001, an additional

48

1  $540.12 in interest accrued.  Finally, National Union notes, no

2  satisfaction of judgment has been filed in the Bond Case.

3  Therefore, National Union argues, the judgment in the Bond Case

4  has not been fully satisfied for purposes of CCP § 685.080.

5      The Garbers respond that the satisfaction of the Bond Case

6  judgment is "law of the case" or that National Union should be

7  judicially estopped from contending to this court that the

8  judgment in the Bond Case has not been satisfied.

9      In so arguing, the Garbers refer to the statement in

10  National Union's brief filed on December 20, 2002 (Doc. 312) at

11  page 4:

> Because the Ninth Circuit has affirmed the
> avoidance of the deed of trust on the Pacific
> Grove property, NATIONAL UNION is entitled to
> keep the proceeds from the sale.  As a
> result, NATIONAL UNION'S original judgment
> has now been paid.  However, the attorneys'
> fees to which this Court has determined that
> NATIONAL UNION is entitled (although the
> amount has not yet been determined) have not
> been paid.

The Garbers further refer to the Ninth Circuit's statement in its

Amended Memorandum, 2002 WL 1968376 (2002):

> At oral argument, National Union told us that
> the bankruptcy court has placed sufficient
> funds in the possession of National Union to
> satisfy the judgment against the Garbers,
> subject to some conditions on the final
> release of those funds.  As such, it appears
> to us that the Garber litigation, apart from
> attorneys' fees, may be moot.  However, the
> relevant records are not part of this appeal,
> nor otherwise before us.

The "law of the case" doctrine is explained in United States

v. Cote, supra, 51 F.3d at 181:

'The law of the case doctrine states that the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case.' ... Because the purpose of the doctrine is to promote judicial finality, it necessarily follows that the law of the case acts as a bar only when the issue in question was actually considered and decided by the first court ... Although the doctrine applies to a court's 'explicit decisions as well as those issues decided by necessary implication,' ... it 'clearly does not extend to issues an appellate court did not address,' ....

Given this standard, that National Union orally made a representation to the Ninth Circuit that the Bankruptcy Court had set aside sufficient funds to satisfy the Bond Case judgment cannot be viewed as law of the case because the Ninth Circuit did not expressly or impliedly reach a decision concerning the consequent mootness of the Fraudulent Conveyance Action, leaving the resolution of the mootness issue to this court. See discussion supra.

More compelling is the Garbers' assertion of judicial estoppel. "Judicial estoppel, sometimes known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." Rissetto v. Plumbers and Steamfitters Local 343, 94 F.3d 597, 600-601 (9th Cir. 1996). "The policies underlying preclusion of inconsistent positions are general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings ... Judicial estoppel is intended to protect against

50

1   a litigant playing fast and loose with the courts ... Because it

2   is intended to protect the dignity of the judicial process, it is

3   an equitable doctrine invoked by the court at its discretion."

4   Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990), cert.

5   denied, 501 U.S. 1260 (1991).

6       Here, the court notes that National Union did not respond to

7   the Garbers' arguments on the merits against National Union's

8   Updated Motion for Attorneys' Fees.  Rather, National Union's

9   initial reply contended that the Garbers were not entitled to

10  reconsideration of the February 12 Order.  It was not until after

11  the court issued its Order on June 17, 2003 directing National

12  Union to address the Garbers' contention that California Code of

13  Civil Procedure §§ 685.070 and 685.090 preclude an award of

14  attorneys' fees incurred in the Fraudulent Conveyance Action in

15  seeking to enforce the judgment in the Bond Case that National

16  Union asserted that the judgment in the Bond Case had not been

17  fully satisfied by the trustee's distribution on October 24,

18  2001.  Therefore, it is clear that National Union changed its

19  position concerning the satisfaction of the Bond Case judgment in

20  an attempt to avoid the consequences resulting to it by the

21  application of the California statutory provisions.

22  Consequently, the court concludes that National Union is

23  judicially estopped from contending that the distribution by the

24  Bankruptcy Court did not fully satisfy the Bond Case judgment.

25      That the judgment in the Bond Case has been satisfied is

26  further evidenced, the Garbers contend, because the trustee

1 tendered the amount then owed to National Union on October 24,

2 2001.  In so arguing, the Garbers refer the court to California

3 Code of Civil Procedure § 685.030(d)(2).

4       Section 685.030 provides in pertinent part:

5           ...

6           (b) If a money judgment is satisfied in full
            other than pursuant to a writ under this
7           title, interest ceases to accrue on the date
            the judgment is satisfied in full.

8
            (c) If a money judgment is satisfied pursuant
9           to a writ under this title or is otherwise
            partially satisfied, interest ceases to
10          accrue as to the part satisfied on the date
            the part is satisfied.

11
            (d) For the purposes of subdivisions (b) and
12          (c), the date a money judgment is satisfied
            in full or in part is the earliest of the
13          following times:

14          ...

15          (1) The date satisfaction is actually
            received by the judgment creditor.

16
            (2) The date satisfaction is tendered to the
17          judgment creditor or deposited in court for
            the judgment creditor.

18
            (3) The date of any other performance that
19          has the effect of satisfaction.

20 The Garbers argue that the trustee's distribution to National

21 Union pursuant to the Order of the Bankruptcy court constitutes a

22 tender of satisfaction, notwithstanding that the distributed

23 funds were to be held in trust by National Union until the

24 Bankruptcy Court resolved the Garbers' motion for

25 reconsideration.  The Garbers further contend that the Bankruptcy

26 Court found that the purpose of the distribution was to satisfy

1  the judgment in the Bond Case.

2      The record before the court is persuasive that National

3  Union moved for and received the distribution of the proceeds of

4  the sale of the Pacific Grove property to satisfy the Bond Case

5  judgment.  Therefore, the court concludes that National Union

6  considered that the judgment in the Bond Case had been satisfied

7  when it received that distribution, a conclusion that is

8  consistent with National Union's representations to the Ninth

9  Circuit and to this court.

10     The Garbers argue that the California Uniform Fraudulent

11 Transfer Act, California Civil Code §§ 3439 et seq., does not

12 provide for attorneys' fees and "does not even provide for an

13 award of damages against the judgment debtor, although it does

14 provide for an award of damages against the transferee in certain

15 instances."  In so asserting, the Garbers refer to Section

16 3439.08(c)("If the judgment under subdivision (b) is based upon

17 the value of the asset transferred, the judgment shall be for an

18 amount equal to the value of the asset at the time of the

19 transfer, subject to adjustment as the equities may require.").

20 The Garbers contend that the judgment debtor is not usually a

21 party to an action under the Uniform Fraudulent Transfer Act and

22 contend that "if attorneys fees could be recovered against

23 judgment debtors in such fraudulent transfer actions, then the

24 time requirements under Section 685.070(b) could arguably be

25 evaded, even though the California legislature specifically

26 included such requirements as a condition and quid pro quo to the

1 simplified method for establishing judgment enforcement costs

2 against the debtor."

3      The provision in Section 3439.08(c), "subject to adjustment

4 as the equities may require", might be construed to allow an

5 award of attorneys' fees against the Garbers.  However, Section

6 3439.08 pertains to the transferee only and not the debtor.

7 There is no basis to impose attorneys' fees on Betty Ting under

8 this section of National Union's motion and, in fact, National

9 Union conceded in the February 12 Order that this ground for

10 award of attorneys' fees did not apply to Betty Ting.

11      The court concludes that the Garbers' arguments for

12 reconsideration of the ruling in the February 12 Order are well-

13 taken.  National Union was required as a matter of California law

14 to have sought an award of attorneys fees incurred in enforcing

15 the judgment in the Bond Case by filing such a motion in the Bond

16 Case.  Because National Union did not do so, National Union

17 cannot obtain attorneys fees based on the underlying judgment in

18 this action.

19           2.   <u>The Garbers Bad Faith</u>.

20      The Garbers argue that the court should reconsider its

21 conclusion that National Union is entitled to attorneys' fees

22 against the Garbers under the bad faith exception, contending

23 that they have not been otherwise sanctioned in this action and

24 contending that the court cannot base its decision on the

25 findings of fraudulent intent set forth in the Summary Judgment

26 Order given the reversal by the Ninth Circuit.  The Garbers note

1   that this court cannot base an award of fees under the bad faith

2   exception solely on the fact that this action was one based on

3   fraudulent conveyances and further note that National Union must

4   show additional facts to justify application of the bad faith

5   exception.  The Garbers contend:

> ... [T]he only basis for avoiding the
> transfer of real property security interests
> was Cal.Civ.Pro. Section 3439.05, which,
> unlike Section 3439.04, includes no findings
> of intent, fraud, or other specifically
> improper dealing.  The decision of this
> Court, as limited by the Memorandum [of the
> Ninth Circuit], is that the transfers of
> additional security were for inadequate
> consideration by debtors insolvent in 1991
> and therefore void.
>
> On the decisional record before this Court at
> the present time, Defendants defended
> themselves vigorously but unsuccessfully.
> Summary judgment was entered against them on
> the basis of inadequate consideration and
> insolvency only.  Although in the Sanctions
> Order, this Court referred to 'every tactic,
> abusive and otherwise, to prevent National
> Union from collecting its judgment,' ...,
> neither NU nor the Court can point to any
> instance during the course of this litigation
> where the Defendants were sanctioned, apart
> from the attorneys fee award in the Fee
> Order.  The Court states that '[m]any of the
> arguments made by the Garbers, especially in
> connection with the motion to dismiss the
> counterclaim and third party complaint and
> the subsequent appeal, were frivolous.' ...
> However, no sanction was imposed on the
> Garbers either in this court or on appeal
> with regard to arguments they may have made,
> and it should be recalled that at the time
> they were in pro per before this Court and on
> appeal ... Even assuming such conduct was
> sanctionable, the fees normally should be
> limited to those incurred in response to the
> abusive conduct, unless bad faith extends to
> the entire case ... The only other instance
> which can be pointed to was the Garbers'

55

declining to sign a document voluntarily in connection with the issue involving corporate records.  It was suggested that the court order them to sign the document, and the court declined to do so.  They nowhere refused to obey any court order and did not violate rules of court.

At bottom, this Court's excoriation of the Garbers is based on findings of fraudulent intent in the Summary Judgment Order.  Those findings cannot be relied upon now. Defendants have a right to demonstrate that they entered into the settlement agreement with Ting in 1988 for reasons which had nothing to do with NU.  That was the position which they have always taken.  Because this Court's judgment under Cal.Civ. Code Section 3439.05 was upheld, those issues are now basically moot.  Awarding attorneys fees for 'bad faith' requires a sound evidentiary basis for taking that extraordinary step.

National Union responds that the court must keep the Ninth Circuit's reversals in context:

The Ninth Circuit did not, e.g., conclude that any of the Court's factual findings were erroneous.  Additionally, the Ninth Circuit did not reverse any of the other findings by the Court.  The only portion of this Court's summary judgment order which was reversed was this Court's actual avoidance of the stock pledges.  The Court's findings regarding, e.g., bad faith, dilatory conduct in connection with National Union's enforcement efforts, including this litigation, remain the Court's findings, and the Court is free to continue to rely on these findings in future matters.  The only matter which this Court cannot do is once again enter summary judgment on the same issue based on the same findings.  The Ninth Circuit simply found that it was not proper to enter summary judgment because of the disputed facts regarding intent.  The Court's June 7, 2000 order granting the motion for sanctions is a perfect example.  Although the Ninth Circuit reversed this Court's ultimate ruling, the Ninth Circuit went on to specifically state

56

that the Court's findings of fact are not clearly erroneous.

The Garbers' broad unfounded assertion that 'there exist <u>no findings</u> ... of fraudulent intent' in the record here is irrelevant and misleading.  The record indicates that all of the prior findings regarding the defendants' conduct in this litigation remain the findings of this Court.  That includes findings of bad faith and conspiracy which were expressly preserved by the Ninth Circuit's conclusion that the factual findings in the Court's June 7, 2000 order are not clearly erroneous.  Although the ultimate judgment against Ting was vacated and remanded, the following findings from the order remain in effect:

> Moreover, as National Union argues, the record before the court establishes that Betty Ting consciously disregarded her obligation to preserve the records after the fraudulent transfer action was filed.  The court concurs with National Union's contention:  ... [T]he only reasonable conclusion is that Ting in fact consciously disregarded her obligation to maintain the records as part of the scheme to defraud National Union.
>
> ... As National Union contended at oral argument, ... it is not a far leap to infer that Ting destroyed these documents as part of the scheme to defraud National Union of its ability to collect its judgment ... [T]he court views with great skepticism any representation by the Garbers or Ting that they were acting independently of each other in this litigation and that they are not acting in concert to delay and frustrate National Union's ability to prosecute this action in a timely and efficient manner. Therefore, the court concludes from the record before it that Ting

57

> acted willfully or in bad faith in
> destroying the business records
> ....

The fact that the Garbers were not previously sanctioned does not negate any finding by this court of their bad faith. The fact that the Garbers were, at some time in this litigation, proceeding in pro per, also does not negate their bad faith. However, the Ninth Circuit's reversal of summary judgment on the stock transfers because of the contested evidence on the intent to defraud National Union persuades the court that it cannot impose all attorneys' fees incurred in the Fraudulent Conveyance Action on the Garbers under the bad faith exception.  It can hardly be bad faith to successfully defend a summary judgment motion.

However, the court has no doubt whatsoever that the Garbers acted deliberately and in bad faith to obstruct and delay National Union's attempt to prosecute this action and obtain satisfaction of the judgment in the Bond Case by asserting meritless arguments and prosecuting a meritless appeal.

In reaching this conclusion, the court relies on the standards governing such an award.  See discussion supra.

The court concludes that the filing by the Garbers on June 24, 1994 of their Counterclaim and Third Complaint for Damages against National Union and others, alleging causes of action for negligence, intentional of emotional distress, declaratory relief, civil conspiracy, and violation of RICO, was in bad faith, as was their opposition to the motions to dismiss the

Counterclaim and Third Party Complaint for Damages.  As noted
supra, the court rejected the Garbers' meritless challenges to
this court's subject matter jurisdiction over National Union's
complaint, dismissed the Third Party Complaint against D'Amato &
Lynch for lack of personal jurisdiction and improper service of
process (which motion was unopposed by the Garbers), and ruled
that, with the exception of the counterclaim for declaratory
relief, all of the counterclaims alleged by the Garbers were
compulsory and barred by res judicata because of the allegations
and rulings in the Bond Case, which was conceded by the Garbers.
The Garbers attempted to overcome this concession by arguing that
they did not know all of the facts during the Bond Case.  In
rejecting this argument, the court noted that there was no
allegation that National Union fraudulently concealed these
alleged facts and the absence of any authority that a party's
alleged ignorance of certain facts has any relevance to a
determination of whether a counterclaim should be considered
compulsory for purposes of Rule 13(a).  The court also dismissed
the Third Party Complaint, ruling that the Garbers, by their
failure to oppose the motion, had conceded dismissal and ruling
that the Third Party Complaint failed substantively as well.  The
court dismissed the Garbers' counterclaim for declaratory relief
by which the Garbers prayed for a declaration that the judgment
in the Bond Case was obtained by fraud.  The court ruled that the
allegations in the counterclaim for declaratory relief pertained
to the bringing of the Fraudulent Conveyance Action, not the Bond

Case, improperly challenged the merits adjudicated in the Bond
Case, or involved allegations of fraud occurring in other
unrelated cases.  The court also ruled that the counterclaim
involved an allegation concerning the failure to provide in
discovery in the Bond Case the original investor application,
which the Garbers admitted had not been the subject of a motion
to compel in the Bond Case, admitted that their suspicion that
the investor application had been altered was not brought to the
court's attention in the Bond Case even though they had this
information prior to summary judgment, and admitted that the
introduction of the original investor application in the Bond
Case would not have resulted in a different conclusion in the
Bond Case.  The Garbers then appealed the dismissal of their
Counterclaim and Third Party Complaint, which dismissal was
affirmed on appeal.

Therefore, the court awards under the bad faith exception
the attorneys' fees incurred by National Union in moving for
dismissal of the Garbers Counterclaim and Third Party Complaint,
attending oral argument in connection with those motions, and for
defending the court's rulings on appeal.  This award includes
those attorneys' fees incurred by the New York law firm of
D'Amato & Lynch, which acts as general counsel to National Union
in lawsuits and which performed legal services in defending
itself against the Garbers' Counterclaim and Third Party
Complaint for Damages and for National Union in this litigation.
This award also includes those attorneys fees incurred by the New

York law firm of Wilson, Elser, Moskowitz, Edelman & Dicker, which was retained by National Union to assist in prosecuting this lawsuit.  This award also includes those attorneys' fees incurred by the Fresno, California law firm of McCormick, Barstow, Sheppard, Wayte & Carruth, which was retained by National Union to prosecute this litigation because of its bankruptcy expertise.

Otherwise, the court concludes, National Union is not entitled to attorneys' fees from the Garbers under the bad faith exception to the American Rule.

### 3.  <u>Substantial Benefit Exception</u>.

In the February 12 Order, the court ruled that National Union is entitled to an award of the attorneys fees incurred in the Fraudulent Conveyance Action and the Garbers' bankruptcy action against the Garbers and to an award of the fees incurred in connection with the Ting bankruptcy from Betty Ting under the "substantial benefit" exception to the American Rule.

The defendants argue that this ruling is invalid because National Union's request for attorneys' fees under this exception violates the automatic stay and should be addressed to the respective bankruptcy courts.  The defendants contend that this court's ruling that is disruptive to the bankruptcy process because claims of substantial benefit to a bankruptcy estate amount to a claim for an administrative expense.  The Garbers note that, on September 11, 2002, National Union filed a Request for Payment of Administrative Expense for Attorneys' Fees (11

U.S.C. § 503) in the Garber Bankruptcy, wherein National Union requested that the trustee pay National Union "a chapter 7 administrative expense claim in the total amount of $359,185.36, representing attorneys' fees and costs incurred in connection with an action to avoid various transfers as fraudulent, which had the effect of bringing in excess of $500,000 into this otherwise no-asset estate."  The Garbers note that National Union's Motion for Attorneys' Fees filed in the Fraudulent Conveyance Action in 2000 was filed without notice to either bankruptcy estate.  The Garbers contend that the Motion for Attorneys' Fees "certainly constituted an 'act to ... exercise control over property of the estate,' even though there was no authority from the bankruptcy court to do so."

National Union responds that it obtained relief from the automatic stays in both bankruptcy cases in order to pursue the Fraudulent Conveyance Action to judgment.  National Union notes that the Complaint in the Fraudulent Conveyance Action prays for attorneys' fees.  Furthermore, there is no evidence that National Union is relying on attorneys' fees order in this action in order to obtain some advantage in either of the bankruptcy proceedings.

However, since these motions were argued and taken under submission, National Union has received attorneys' fees from the Bankruptcy Court in the Garbers' bankruptcy in the amount of $139,015.25 as an administrative expense pursuant to 11 U.S.C. § 503.  The Garbers appealed the award of this administrative expense to this court in No. CV-F-04-6040 REC.  By Opinion filed

1  on January 24, 2006, the award by the Bankruptcy Court was

2  affirmed.   Therefore, the court concludes that National Union's

3  request for attorneys' fees incurred in the Garbers' bankruptcy

4  in the instant action is no longer appropriate because National

5  Union has been awarded the attorneys' fees by the Bankruptcy

6  Court.

7       The court further concludes that National Union should move

8  for attorneys' fees incurred in connection with the Ting

9  bankruptcy from the Bankruptcy Court.

10       Therefore, the court does not award attorneys' fees incurred

11  by National Union in connection with these bankruptcies

12       E.   <u>Reasonableness of Fees</u>.

13       The calculation of the attorneys' fees award is governed by

14  state law, a point made by National Union.   California applies

15  the "lodestar" method for determining reasonable attorneys' fees.

16  <u>See</u> PLCM Group, Inc. v. Drexler, 22 Cal.4th 1084, 1095-1096

17  (2000)(citing cases from 1985 and 1995).

18       Rule 54-293(b)(4), Local Rules of Practice requires an

19  affidavit of counsel in support of the motion showing "the

20  information pertaining to each of the criteria set forth in

21  subsection (c) of this Rule ...."   Rule 54-293(c) provides:

22               (c) Criteria for Award.   In fixing an award
                 of attorneys' fees in those actions in which
23               such an award is appropriate, the Court will
                 consider the following criteria:
24
                 (1) the time and labor required of counsel;
25
                 (2) the novelty and difficulty of the
26               questions presented;

63

1          (3) the skill requisite to perform the legal
           service properly;
2
           (4) the preclusion of other employment by
3          counsel because of the acceptance of the
           action;
4
           (5) the customary fee charged in matters of
5          the type involved;

6          (6) whether the fee contracted between the
           attorney and the client is fixed or
7          contingent;

8          (7) any time limitations imposed by the
           client or the circumstances;
9
           (8) the amount of money, or the value of the
10         rights involved, and the results obtained;

11         (9) the experience, reputation and ability of
           counsel;
12
           (10) the 'undesirability' of the action;
13
           (11) the nature and length of the
14         professional relationship between the
           attorney and the client;
15
           (12) awards in similar actions; and
16
           (13) such other matters as the Court may deem
17         appropriate under the circumstances.

18   In Hensley v. Eckerhart, 461 U.S. 424 (1983), the Supreme Court

19   stated that "[t]he most useful starting point for determining the

20   amount of a reasonable fee is the number of hours reasonably

21   expended on the litigation multiplied by a reasonable hourly

22   rate."  Id. at 433.  This resulting figure is known as the

23   lodestar.  Although there is a strong presumption that the

24   lodestar represents a reasonable fee, Burlington v. Dague, 505

25   U.S. 557, 562 (1992), the district court has the discretion to

26   exclude from the initial fee calculation hours that were not

                                   64

reasonably expended, for example, cases that are overstaffed. Furthermore, the Supreme Court in <u>Hensley</u> held:

> Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. 'In the private sector, "billing judgment" is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's <u>client</u> also are not properly billed to one's <u>adversary</u> pursuant to statutory authority.' ....

<u>Id</u>. at 434. The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked. <u>Id</u>. at 433, 437. The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits. <u>Blum v. Stenson</u>, 465 U.S. 886, 892 n.5 (1984); <u>Toussaint v. McCarthy</u>, 826 F.2d 901, 904 (9th Cir. 1987).

> 1.   <u>Betty Ting</u>.

As discussed <u>supra</u>, the court awards attorneys' fees incurred by National Union in bringing and arguing the motion for a sanction for spoliation of evidence.

From the court's review of the billing records submitted with the Declaration of Scott M. Reddie of McCormick, Barstow filed on July 7, 2000 the amount of attorneys' fees incurred by National Union in bringing and arguing the motion for spoliation

1   of evidence is $1,635.00.  From the court review of the

2   Declaration of Laurie Beatus of D'Amato & Lynch filed on July 7,

3   2000, the amount of attorneys' fees incurred by National Union in

4   bringing and arguing the motion for spoliation of evidence is

5   $471.50.  Therefore, the total amount of attorneys' fees incurred

6   by National Union with regard to the motion for spoliation of

7   evidence in $2,106.50.

8        The court concludes that National Union has appropriately

9   documented the hours expended by counsel.  Ting argues that the

10  court should not award attorneys' fees for work done by D'Amato &

11  Lynch because of its supervisory role in this litigation and

12  because of duplication of effort.  In this litigation, however,

13  the court rules that the supervision and consultation between

14  D'Amato & Lynch and McCormick, Barstow was necessary given the

15  complexity and duration of the litigation, particularly with

16  regard to the delay in hearing the motion because of Ting's

17  intervening bankruptcy.  The court further concludes that number

18  of hours expended in connection with the motion for spoliation of

19  evidence was reasonable.

20       The court further rules that the hourly rates charged by the

21  various attorneys and paralegals who worked on the motion for

22  spoliation of evidence are reasonable and reflect the hourly

23  rates generally charged in the Eastern District of California by

24  attorneys of similar experience and background.

25            b.   The Garbers.

26       As discussed supra, the court awards under the bad faith

66

exception the attorneys' fees incurred by National Union in moving for dismissal of the Garbers Counterclaim and Third Party Complaint, attending oral argument in connection with those motions, and for defending the court's rulings on appeal.

From the court's review of the Declarations of Scott Reddie and Laurie Beatus filed on July 7, 2000, the amount of these attorneys' fees are as follows: (1) Wilson, Elser, Moskowitz, Edelman & Dicker - $4,496.25; (2) D'Amato & Lynch - $7,954.50; (3) McCormick, Barstow - $14,001.50.  The total amount of attorneys' fees incurred by National Union with these matters was $26,452.25.

The court concludes that these fees are appropriately documented and again rejects the contention that the award should be reduced to the extent that D'Amato & Lynch acted in a supervisory role.  The supervision and consultation between D'Amato & Lynch and McCormick, Barstow was necessary given the complexity and duration of the litigation, particularly seeing that the Garbers named D'Amato & Lynch in their Counterclaim and Third Party Complaint for Damages.  The court further rules that the hourly rates charged by the various attorneys and paralegals who worked on the motion for spoliation of evidence are reasonable and reflect the hourly rates generally charged in the Eastern District of California by attorneys of similar experience and background.

ACCORDINGLY:

1.  National Union's Updated Motion for Attorneys' Fees is

67

granted in part and denied in part.

2.  National Union is awarded attorneys' fees against Betty Ting in the amount of $2,106.50.

3.  National Union is awarded attorneys' fees against Chester Garber and Emilia Garber in the amount of $26,452.25.

IT IS SO ORDERED.

**Dated:  July 13, 2006**                    **/s/ Robert E. Coyle**
668554                                       UNITED STATES DISTRICT JUDGE