# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, <br><br> Plaintiff, <br><br> v. <br><br> CHESTER S. GARBER AND EMILIA T. GARBER, <br><br> Defendants. | DISTRICT COURT CASE NO. 94-5414 AWI DLB <br><br> BANKRUPTCY COURT CASE NO. 94-14422-A-7 <br><br> BANKRUPTCY ADVERSARY PROCEEDING NO. 94-1361-A <br><br> ORDER RE: MOTION FOR RECONSIDERATION |

Plaintiff has made a motion to reconsider the court's August 29, 2007 Order denying its motion to refer the adversary proceeding back to the bankruptcy court as moot. Defendants oppose Plaintiff's motion.

**I. History**

This case has a long and complex background. The court refers to the detailed history set forth in the July 18, 2006 Order written by Judge Robert E. Coyle. Doc. 343. In summary, the Garbers executed certain promissory notes in 1984 for which National Union acted as surety. The Garbers subsequently defaulted. National Union sued the Garbers and was ultimately awarded $155,637.39 in damages (Case No. CV-F-88-0088 REC, "Bond Case"). The Garbers did not pay the civil judgment and filed for bankruptcy. National Union alleges that they

1

1  fraudulently transferred their assets to Betty Ting, a family member.  Meanwhile, National Union
2  filed this suit to avoid the transfers and enforce payment of the previous civil judgment
3  ("Fraudulent Conveyance Action").  National Union's complaint states, "National Union was and
4  still is entitled to judgment against the Garbers in the amount of $155,637.39. In addition,
5  National Union is entitled to interest accrued from the date of original entry of the judgment, as
6  well as costs accrued and incurred in enforcing such judgment....National Union prays for
7  judgment as follows: Voiding the Garbers' transfer of the stock certificates of Emilia Chua Ting,
8  M.D., Incorporated to Betty Ting and allowing enforcement of the original judgment entered
9  against the Garbers together with interest and costs, against such property, less any applicable
10 exemptions and superior liens." Doc. 1, Complaint, at 8:25-10:17.  Simultaneously, they filed
11 Adversary Proceeding No. 94-1361 ("Adversary Proceeding") in the Garbers' bankruptcy,
12 asserting that the civil judgment in the Bond Case is nondischargeable.  In the complaint in
13 bankruptcy court, National Union stated "National Union has suffered a loss in an amount in
14 excess of $155,637.39, which includes post-judgment costs, attorney's fees and interest accrued
15 to date. By reason of the foregoing, National Union is entitled to an order that the obligation of
16 Defendant to National Union is nondischargeable." Doc. 372, Ex. A, at 8:2-7.

17      In the course of prosecuting the Fraudulent Conveyance Action, the relation of the
18 Adversary Proceeding was raised by the parties.  National Union advocated withdrawing the
19 Adversary Proceeding to district court; the Garbers sought to leave it with the bankruptcy court.
20 On September 12, 1995, Judge Coyle ruled "this court, although not familiar with the facts
21 underlying National Union's claims of fraudulent transfer, is very familiar with the facts
22 underlying the entry of the original judgment. Moreover, if the court retains the Counterclaim
23 and Third Party Complaint in order to resolve the various motions to dismiss, it will be more
24 judicially expeditious to have this court hear both the adversary proceeding and the Complaint.
25 Consequently, the court concludes that it will withdraw the reference to the bankruptcy court of
26 the adversary proceeding filed by National Union." Doc. 69, Order Granting in Part and Denying
27 in Part Motion to Dismiss, at 13:13-22.  Judge Coyle made no statement in that order or any
28 other as to whether the Adversary Proceeding was directly folded into the main Fraudulent

Conveyance Action or whether it should be prosecuted as a separate case. In 1996, National Union made a formal motion to consolidate the Adversary Proceeding with the Fraudulent Conveyance Action in a newly opened case, (CV-F-96-6027 REC, "Consolidation Motion"). Before any response was made, National Union withdrew the motion. The case was administratively closed due to lack of prosecution at the end of 1998.

The Fraudulent Conveyance Action then proceeded for several years through many motions and appeals. In the July 18, 2006 Order, Judge Coyle stated, "On October 5, 2001, the bankruptcy court in the Garbers' bankruptcy allowed the release to National Union of $218,095.70, which distribution represents the full amount of National Union's underlying judgment plus interest in the Bond Case [the $155,637.39]....the court concludes that the satisfaction of the judgment in the Bond Case moots all issues in this action except those issues relating to the sanction to be imposed on Betty Ting because of her spoilation of evidence and those issues relating to National Union's request for an award of attorneys' fees and costs against the Garbers and Ting." Doc. 343, at 19:24-20:2 and 23:20-24:2. In that order, Judge Coyle awarded National Union only $28,558.75 in attorney's fees out of the $448,451.25 requested. National Union has appealed that decision to the Ninth Circuit. Doc. 346.

Judge Coyle retired and the case was reassigned. National Union then made a motion to refer the Adversary Proceeding back to the bankruptcy court, arguing that it was a separate case that had not been acted upon by either of the parties. Doc. 357. Defendants opposed the motion. Doc. 361. The court ruled that the Adversary Proceeding had been folded into the Fraudulent Conveyance Action and so was disposed of in Judge Coyle's July 18, 2006 Order. Doc. 368. Plaintiff now seeks reconsideration of that decision under Fed. R. Civ. Proc. 59(e) and 60(b), arguing the court committed clear error.

## II. Legal Standards

Federal Rule of Civil Procedure 59(e) provides a mechanism for a court to alter, amend, or vacate a prior order. "Although Rule 59(e) permits a district court to reconsider and amend a previous order, the rule offers an extraordinary remedy, to be used sparingly in the interests of

finality and conservation of judicial resources. Indeed, a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law. A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." Kona Enters. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000), citations and quotations omitted. "A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden." United States v. Westlands Water Dist., 134 F.Supp.2d 1111, 1131 (E.D. Cal. 2001). This standard is a "high hurdle." Weeks v. Bayer, 246 F.3d 1231, 1236 (9th Cir. 2001). Rule 59(e) "does not provide a vehicle for a party to undo its own procedural failures [or] allow a party to introduce new evidence or advance new arguments that could and should have been presented to the district court prior to the judgment." Dimarco-Zappa v. Cabanillas, 238 F.3d 25, 34 (1st Cir. 2001).

### III. Discussion

In briefing the original motion to refer the Adversary Proceeding back to the bankruptcy court, National Union explained the rationale for its actions: "As a result of these orders [in 2001] and other decision by the District Court, National Union believed that it would obtain most, if not all, of the relief it sought through favorable judgments from the District Court in the Fraudulent Transfer Action and awards from the two bankruptcy estates. Under that scenario, National Union would not have to pursue the Adversary Proceeding. That is the reason Notional Union did not move forward with the adversary proceeding: it did not want to incur additional attorney's fees or burden the Court with potentially unnecessary litigation....It was not until the District Court entered its Order on July 18, 2006 in connection with National Union's updated motion for attorney's fees that National Union determined that it must now move forward with the adversary proceeding. As stated in the moving papers, National Union has also filed a proof of claim in the Garber bankruptcy. The proof of claim is seeking essentially the same fees that

were sought in the fraudulent transfer action but under the theory that an underlying contract between the Garbers and National Union (that provided the basis of the underlying judgment against the Garbers for $151,327.39) provides that National Union is entitled to fees and costs incurred in connection with its efforts to collect its judgment." Doc. 362, National Union's Referral Reply, at 5:13-6:2. National Union is dissatisfied with the amount of attorney's fees awarded in Judge Coyle's July 18, 2006 Order and is attempting to attack it in a collateral manner in addition to directly appealing it to the Ninth Circuit.

National Union argued that "Following the withdraw of the reference of the adversary proceeding, it does not appear that a separate district court case number was ever assigned to the action. Furthermore, none of the parties to the adversary proceeding took any action with respect to the proceeding." Doc. 358, National Union's Referral Brief, at 3:1-3. That is an inaccurate statement as National Union made the Consolidation Motion in 1996. That action opened a new case number. At that time National Union said clearly, "The Fraudulent Transfer action [Fraudulent Conveyance Action] and the Dischargeability Actions [Adversary Proceeding] contain identical questions of law and fact." Case No. CV-F-96-6027 REC, Doc. 1, National Union's Motion to Consolidate Actions, at 4:14-16. After National Union's withdrawal of the motion, the case was administratively closed due to lack of prosecution. This court interprets these events as demonstrating that the Adversary Proceeding had already been effectively consolidated with the Fraudulent Conveyance Action. If National Union had thought the Adversary Proceeding were separate, it would not likely have remained silent in the face of a dismissal for lack of prosecution.

More importantly, the rulings in the Fraudulent Conveyance Action have resolved all relevant legal issues in the Adversary Proceeding. In its reconsideration motion, National Union asserts, "the relief sought in the fraudulent transfer action was avoidance of the transfers whereas the relief sought in the adversary proceeding is to deny the Garbers their discharge and have any debts owing to National Union declared nondischargeable." Doc. 371, Part 2, National Union's Reconsideration Brief, at 3:14-18. National Union's ultimate interest in both actions is monetary compensation as opposed to any form of declaratory or injunctive relief; the distinction National

Union draws is immaterial. As it admitted in its previous filing, the two actions seek the identical monetary recovery and identical attorney's fees. National Union has received its judgment but appears to be attempting trying to work around Judge Coyle's decision in order to obtain additional attorney's fees. Analyzing the Adversary Proceeding as National Union has formulated the case, it seeks two things: (1) to deny the Garbers a discharge from their bankruptcy and (2) to have the debts owing to National Union declared nondischargeable. National Union no longer has standing to sue for either of the two forms of relief. First, the Garbers' debt to National Union has been paid in full; Judge Coyle ruled that the Bond Case judgment has been fully satisfied. Doc. 343, July 18, 2006 Order, at 46:10-53:9.[1] The court fails to understand how the dischargeable/nondischargeable status of a debt that has been fully paid is relevant. Second, National Union has no interest in whether the Garbers' bankruptcy can be brought to a close through discharge once its claims have been satisfied. Asserting that their suit "impacts every creditor of the Garber estate because if their discharge is denied, none of their debts will be dischargeable" (Doc. 371, Part 2, National Union's Reconsideration Brief, at 5:10-11) does not establish standing. From all angles, the Adversary Proceeding is moot on its merits. The only real issue National Union contests is the attorney's fees award, which is before the Ninth Circuit on appeal.

National Union's briefing outlines its approach to the question of attorney's fees in the

---

[1] Judge Coyle's discussion points to the fact that National Union has a pattern of making contradictory representations to the court. This practice, while by no means the sole or even main cause, has contributed to the delay in resolution of the case. Judge Coyle noted that National Union tried to back away from an earlier admission that the Bond Case judgment had been paid in full and ruled that judicial estoppel applied. Doc. 343, July 18, 2006 Order, at 51:18-24. This court finds it curious that National Union now claims that it did not actively pursue the Adversary Proceeding because "it did not want to incur additional attorney's fees or burden the Court with potentially unnecessary litigation" when it had earlier argued "The length of time to conclude both suits will decrease if the suits are consolidated. Expenses will be decreased for all parties concerned if there is a single trial" and "it would be a waste of judicial resources to adjudicate these actions separately." Compare Doc. 362, National Union's Referral Reply, at 5:18-19 with Case No. CV-F-96-6027 REC, Doc. 1, National Union's Motion to Consolidate Actions, at 4:21-24 and 7:4-5.

Adversary Proceeding: "The proof of Claim [in the Adversary Proceeding] is seeking essentially the same fees that were sought in the fraudulent transfer action but under the theory that an underlying contract between the Garbers and National Union (that provided the basis for the underlying judgment against the Garbers for $151,327.39) provides that National Union is entitled to fees and costs incurred in connection with its efforts to collect judgment...In accordance with paragraph 14 of the contract, the contract is to be interpreted under New York law." Doc. 362, National Union's Referral Reply, at 5:26-6:5.  However, the contract provision basis for attorney's has already been adjudicated in the Fraudulent Conveyances Action.  In his February 12, 2001 Order deferring resolution of National Union's motion for attorney's fees, Judge Coyle noted, "National Union contends it is entitled to an award of attorneys fees against the Garbers because the contract in the Bond Case provided for attorneys' fees," and approved of that argument. Doc. 260, at 25:7-9.  Subsequently, Judge Coyle reconsidered his holding and found "National Union was required as a matter of California law to have sought an award of attorney's fees incurred in enforcing the judgment in the Bond Case by filing such a motion in the Bond Case. Because National Union did not do so, National Union cannot obtain attorneys fees based on the underlying judgment in ths action." Doc. 343, July 18, 2006 Order, at 54:13-18. Insofar as National Union seeks to advance some new variant of the contract provision theory based on New York law, such a shift would be problematic as it repeatedly argued to Judge Coyle that California law applies in determining whether attorney's fees were warranted. See Doc. 339, National Union's Response to June 17, 2003 Order, at 5:7-9 ("as a matter of California statutory law, National Union is entitled to an award of attorneys' fees incurred in its efforts to enforce its Bond Case judgment"); Doc. 249, National Union's Attorney's Fees Reply, at 2:15-16 ("the Court can look to California statutes to determine whether National Union is entitled to attorneys' fees and, if so, the amount of fees").

    Any argument based on New York law should have been previously raised.  Judge Coyle had no affirmative duty to independently consider whether the contract raised choice of law implications.  "Where the parties fail to raise the issue of choice of law, the Court need not raise the issue sua sponte, and the parties are deemed to have acquiesced in the application of the law

of the forum." <u>Keles v. Yale Univ.</u>, 889 F. Supp. 729, 733 (S.D.N.Y. 1995), citing <u>Montana Power Co. v. Public Util. Dist. No. 2</u>, 587 F.2d 1019, 1022 n.1 (9th Cir. 1978).  "In all events, it is normally not error at all, let alone plain error, for a court to ignore a possible claim or defense that a party fails to proffer and pursue." <u>Town of Norwood v. New England Power Co.</u>, 202 F.3d 408, 417 (1st Cir. 2000).

Judge Coyle's many orders in this case made determinative rulings on all relevant issues in both the Fraudulent Conveyances Action and the Adversary Proceeding.  The order determining the amount of attorney's fees awarded (July 18, 2006 Order, Doc. 343) is on appeal. This court has no jurisdiction to entertain a motion to refer the Adversary Proceeding back to the bankruptcy court.

### IV. Order

National Union's motion for reconsideration is DENIED.

IT IS SO ORDERED.

**Dated:   November 14, 2007**                         **/s/ Anthony W. Ishii**
                                                                         UNITED STATES DISTRICT JUDGE